ORLEANS HORNSILVER MINING CO. *v.* LE CHAMP
D'OR FRENCH GOLD MINING CO., LTD., ET AL.

No. 2876

February 5, 1930.                                    284 P. 307.

(See, also, 52 Nev. 85.)

*Harwood & Diskin,* for Appellant:

94

*John F. Kunz*, for Respondents:

## OPINION

By the Court, COLEMAN, J.:

This is an action in tort to recover judgment in the sum of $127,575, damages alleged to have been sustained as the result of a conspiracy, culminating, as alleged, in the forfeiture of a bond and lease upon certain mining property.

Judgment was rendered in favor of the defendants. A motion for a new trial was made and denied. The plaintiff has appealed.

We will refer to the corporate parties as "plaintiff" and "defendant company," and to individuals, where necessary, by their respective names.

On January 1, 1921, defendant company, through E. Carter Edwards, its attorney in fact, executed and delivered to defendant Dunfee a lease upon certain mining property for the term of four years, together with an option to purchase within said period. The lease provided, among other things, that Dunfee should perform 60 shifts of work per month upon said property during the life of the lease, and for failure to do so that the lease and option held by him might be forfeited by defendant company. In due time Dunfee took possession of the property and proceeded to work the same.

A few months thereafter an agreement was entered into between Dunfee and A. I. D'Arcy, whereby Dunfee agreed to sell all of his interest in the said lease and option to D'Arcy for $40,000, $15,000 cash and the

balance in installments evidenced by promissory notes, D'Arcy assuming and agreeing to pay to the defendant company for the property the amount. named in the option to Dunfee, to which agreement defendant company became a party by reason of its written approval. Pursuant to this agreement D'Arcy organized the plaintiff company, which took over his contract and thereafter entered into possession of the property and began to operate the same.

Three years or more thereafter, the plaintiff not being in active operation and development of the property, the defendant company served written notice upon it that unless it resumed work and performed 60 shifts of labor per month upon the property the lease and option would be declared forfeited and possession taken by it. Plaintiff having failed to resume work and do the 60 shifts required, within the time required, defendant company took· possession of the property.

Numerous other details are presented in the record, but we do not deem it necessary to state them.

Many errors are assigned and argued in plaintiff's opening brief, but it is necessary to determine but one of them in view of the following statement in its reply brief: "We admit that if the stipulation contained in the Defendant's Exhibit D requiring Dunfee to perform sixty shifts were binding on appellant, that the lease might be lawfully cancelled."

We do not think the question seriously debatable.

■ In considering this question it is urged by plaintiff that the agreement between Dunfee and D'Arcy (exhibit D) is a sublease and not an assignment of Dunfee's interest, and hence plaintiff was not obligated to do the 60 shifts monthly; plaintiff conceding, as we understand, that if it be an assignment, plaintiff was obligated to do the work.

While we think a sublessee might obligate himself to do the work required in a lease or forfeit his interest, we will dispose of the question presented.

The agreement between Dunfee and D'Arcy recites

that whereas D'Arcy "is desirous of purchasing all of the right, title and interest of said J. W. Dunfee in said lease and option, and thereby acquire title to the mining claims and mining property  *  *  *  in A. I. D'Arcy, in like manner as J. W. Dunfee is entitled under said lease and option to acquire title therein  *  *  *  the party of the first part (Dunfee) hereby agrees to assign, sell, transfer, and convey to the party of the second part (D'Arcy) all the right, title, interest, property, claim or demand whatever, of the party of the first part, of, in or to, that certain lease and option  *  *  *  said lease and option is hereby referred to and made a part hereof. *  *  *  When the full payment of $40,000.00 shall be paid to J. W. Dunfee, according to the terms, and upon the payments in this agreement provided, the assignment, sale, transfer, and conveyance of all the right, title and interest of J. W. Dunfee, of, in, and to, shall become and be fully vested in said A. I. D'Arcy. *  *  *  "

In the lease and option from the defendant company to Dunfee it is provided that time shall be of the essence of the contract and that for failure to comply with its terms said lease and option may be forfeited.

We think it clearly appears from the agreement between Dunfee and D'Arcy that it was an assignment of the lease and option held by Dunfee. We say this because the agreement has all of the earmarks of an agreement of sale and none of a sublease. Giving the language of the agreement its usual and popularly accepted meaning, there is not a word in it to signify a sublease, but every word indicates a sale. In fact, if we were extremely desirous of holding the agreement a sublease, we can find nothing in it upon which to base such a conclusion. A sublease on mining property provides for the payment of royalties on the ore shipped. In the instant case the agreement does not provide for the payment of royalties to Dunfee, but does provide that from the ores shipped, after payment of royalties to defendant company, "the balance of said net returns

to J. W. Dunfee, party of the first herein to be applied on the next payment or payments coming due hereunder."

■ But we think, whether the agreement between Dunfee and D'Arcy be an agreement of sale or a sublease, it was obligatory upon plaintiff company to perform the 60 shifts.

Pursuant to the terms of the agreement, plaintiff was put into the exclusive possession of the property and of all of the machinery, tools, and appliances used in the operation of the property; furthermore, by the very terms of the agreement with Dunfee it is recited that D'Arcy is desirous of acquiring title to the property "in like manner as J. W. Dunfee is entitled under said lease and option to acquire title therein." Is not this conclusive upon the point that it thereby obligated itself to perform all of the conditions imposed upon Dunfee as a condition precedent to acquiring title? We can imagine no other interpretation to be put upon this language.

Counsel for respondent asserts that Dunfee and D'Arcy, in providing in their agreement that "said lease and option is hereby referred to and made a part hereof" (referring to the lease and option held by Dunfee), expressly imposed upon D'Arcy the obligation of performing the 60 shifts. As to this contention counsel for plaintiff contend that this reference was for the purpose of description, and hence it did not become obligatory on plaintiff to perform the 60 shifts, and in this connection our attention is called to the case of Wallace v. Oregon Engineering and Construction Co., 90 Or. 31, 174 P. 156, 157, 175 P. 445, and other cases of similar import.

■ In the case mentioned it is said: "A reference in a subcontract to the general contract for a particular purpose makes it a part of the subcontract only for the purpose specified."

There can be no doubt of the correctness of this statement.

The general rule is stated in 13 C. J. 530, as follows: "Writings which are made a part of the contract by

annexation or reference will be so construed; but where the reference to another writing is made for a particular and specified purpose, such other writing becomes a part for such specified purpose only."

■ In the instant case it does not appear that the lease and option was made a part of the agreement between Dunfee and D'Arcy for a particular and specific purpose, and hence we must assume that such was not the intention.

But if the question were a doubtful one, it would be our duty to resolve it in favor of the defendants, for the reason that the plaintiff itself construed the agreement between Dunfee and D'Arcy as an assignment until nine months had elapsed after the testimony had been taken in this case, as had the defendants.

■ In the complaint in this action plaintiff alleged a sale from Dunfee to D'Arcy of his interest in the lease and option. At the conclusion of the taking of testimony in the case it was continued for argument, and upon the argument nine months later plaintiff sought to amend its complaint to allege that the agreement between Dunfee and D'Arcy was a sublease, instead of a sale. The court rightly denied the application.

■ Some time after the plaintiff had entered into possession of the property under the agreement in question, and while it was developing the same, a suit in equity was instituted in the federal court against the defendant company, Dunfee, and plaintiff, in which it was alleged that the defendant Dunfee held his lease and option as a trustee for the plaintiff in that suit, and praying that such be decreed to be the fact. Shortly after the institution of that suit, defendant company gave written notice to plaintiff to the effect that during the pendency of the suit in the federal court, mentioned, it need not prosecute work upon the property in question. Thereafter the plaintiff sought and received from defendant company an agreement relieving it temporarily of the necessity of prosecuting the work upon the property. Every contract should be construed so as to give effect to the intention of the parties. In the instant

case both construed the contract as imposing upon plaintiff the duty of doing the work, and this, too, before any thought of litigation. Who is more capable of determining their intentions?

While what we have said must result in an affirmance of the judgment and order appealed from, we may add that we have carefully considered the evidence and are of the opinion that the findings and judgment are amply sustained.

For the reasons given, it is ordered that the said order and judgment be affirmed.

### On Petition for Rehearing

By the Court, COLEMAN, J.:

Counsel have presented a petition for rehearing, in which it is said that through their failure to make clear their points the court failed to grasp their contentions, and hence reached an erroneous conclusion.

Learned counsel are very considerate in assuming responsibility, but we may say that they can never be justly charged with such shortcomings. We may say, too, that though we did not discuss all of the points and law presented in the original briefs we think we grasped the force of the points urged, and of the law stated in support thereof.

We did not deem it necessary in our original opinion to consider all of the points urged in the opening brief of appellant, because of the concession made in its reply brief to the effect that if the stipulations contained in defendants' exhibit D requiring Dunfee to perform sixty shifts were binding on appellant that the lease might be lawfully canceled. In fact, we would probably have taken that position had there been no such concession.

Counsel say in their petition:

" * * * We could not be obligated under defendants' exhibit D until such time as we acquired Dunfee's interest in defendants' exhibit D, and this interest could not be acquired by us under the terms of the contract until we paid Dunfee $40,000.00. We submit this statement is plain and not difficult to comprehend. In

plaintiff's exhibit 6, we agreed to mine and develop the property and nothing more. Therefore until such time as we connected ourselves with Dunfee's title to defendants' exhibit D, our contract was that we should mine and develop. We were not obligated to perform the sixty shifts until we stepped into Dunfee's shoes and acquired, by paying him $40,000.00, his lease and option which he had and held from the French Company."

We do not think this contention difficult to grasp, and it is equally easily answered. In fact, had we made our position clear in our original opinion, we doubt if it would have been again challenged.

Bearing in mind that plaintiff's exhibit 6 is the original contract (lease and option) between Dunfee and defendant corporation, and that it imposed upon Dunfee the performance of sixty shifts per month, coupled with the condition that for failure to comply with such condition that the company (lessor and optionor), at its option, might declare such contract, and the rights of Dunfee thereunder, forfeited in case of failure to perform the sixty shifts, it would seem that no one could strenuously urge that had Dunfee continued to hold the lease and option, but failed to do the sixty shifts monthly, his rights could not have been cut off by the defendant company. Holding as we did that the plaintiff was an assignee of Dunfee's interest in the lease and option, and as such took exclusive possession of the property — considering itself as such assignee during the entire life of the lease and option, and until nine months after the testimony in this case was taken—it was certainly charged with the duty of complying with the terms, not only of exhibit D but of exhibit 6 as well, as we sought to show in the original opinion.

The plaintiff knew that someone had to do the work. It was notified to do it, and that for failure to comply its rights would be cut off. There is no intimation that it then took the position that it was not charged with the burden of doing the work. It does not appear that it demanded of Dunfee that he perform it. Every circumstance in connection with the case tends to show

that the plaintiff understood that it must do the work. On what theory did it seek and receive permission of defendant company on one or more occasions to temporarily cease operations? Again we say we do not think the question seriously debatable.

The petition is denied.