## UNITED STATES
### v.
## EXCEL PACKING CO., Inc.
### No. 4699.

United States Court of Appeals,
Tenth Circuit.

Feb. 15, 1954.

Joseph Langbart, Atty., Dept. of Justice, Washington, D. C. (Warren E. Burger, Asst. Atty. Gen., George Templar, U. S. Atty., Arkansas City, Kan., Edward H. Hickey and George Arthur Fruit, Attys., Dept. of Justice, Washington, D. C., on the brief), for appellant.

Emmet A. Blaes and J. Francis Hesse, Wichita, Kan. (Jochems, Sargents & Blaes, Wichita, Kan., on the brief), for appellee.

Before PHILLIPS, Chief Judge, and HUXMAN and MURRAH, Circuit Judges.

HUXMAN, Circuit Judge.

This was an action by the United States against the Excel Packing Company, herein called Excel, under Section 409(c) of the Defense Production Act of 1950, as amended, 50 U.S.C.A.Appendix, § 2109(c), herein referred to as the Act. The Complaint sought treble damages for violations of O. P. S., Price Ceiling Regulation Number 24. It alleged that Excel violated the regulation by selling meat in excess of maximum prices fixed by the regulation. The trial court sustained a motion to dismiss the complaint on the ground that it failed to state a cause of action on which relief could be granted. This appeal challenges the correctness of the court's conclusions and judgment based thereon.

The trial court did not state the grounds on which it based its judgment. In support of the court's judgment, appellee urges that Title IV of the Act was void and unconstitutional because at the time of its enactment no state of gen-

eral emergency existed nor was there any declaration of war. Not much need be said with respect to these contentions. At the time the Act was passed, we were still in a state of declared war with Germany and it Allies. The war with Germany was not terminated until the fall of 1951[1] and the Treaty of Peace with Japan was not ratified until the spring of 1952[2]. The right of Congress to exercise its war power does not end with the cease fire order[3]. Neither is Congress limited in its right to invoke such powers only upon a formal declaration of war or from the firing of the first gun. The power and duty of Congress under its war powers to legislate for the national security and welfare exists from the date of the recognition of the existence of a war emergency and ceases only when it can reasonably be said that the national emergency resulting therefrom has come to an end. Certainly it cannot be said that at a time when we were still technically at war with our two main antagonists and when the Korean crisis was appearing on the horizon that the war emergency with its attendant critical national problems had passed and come to an end.

■ The power of Congress to legislate for the national defense and security in time of war or during a national emergency is not challenged. It is, however, contended that Congress did not recognize the existence of a national emergency in the passage of the Act and that, therefore, an attempt to exercise its emergency powers was void. That Congress recognized the existence of a national emergency and the existence of a state of war cannot be successfully challenged. Section 2 of the Act recites " * * * the policy of the United States [is] to oppose acts of aggression and to promote peace" and in doing so the United States "is determined to develop and maintain whatever military and economic strength is found to be necessary to carry out this purpose" which "task requires diversion of certain materials and facilities from civilian use to military and related purposes" and that it is intended "to provide the President with authority to accomplish these adjustments in the operation of the economy[4]." There can, therefore, be little question that the Act was primarily passed to promote the national defense.

■ A further contention is made that in any event the Act is unconstitutional because it delegates legislative authority to the administrator. It is conceded that for all practical purposes the Act of 1950 was a re-enactment of the Emergency Price Control Act of 1942, 50 U.S.C.A.Appendix, § 901 et seq. The purposes and standards set out in the Act are the same as those in the Act of 1942. The provisions with respect to setting up the machinery for the enforcement of the policy declared in the Act, which it is contended unlawfully delegates legislative authority, do not differ materially from like provisions in the 1942 Act. The Supreme Court in cases involving similar provisions under that Act held that it could find no unlawful delegation of legislative authority[5] and without more it is sufficient so say that what the court said in those cases with reference to the unlawful delegation of legislative authority applies with equal force here and is dispositive of this contention.

Finally, it is contended that the judgment is right because Regulation Number 24 is absolutely void and a nullity

---

1. See H. J. Resolution 289, 82nd Congress, approved October, 1951. P.L. 181, 65 Stat. 451, 50 U.S.C.A.Appendix, p. XX.

2. The Treaty of Peace with Japan was ratified by the Senate March 20, 1952, and was signed by the President April 15, 1952, 50 U.S.C.A.Appendix, p. XIX.

3. Fleming v. Mohawk Wrecking & Lumber Co., 331 U.S. 111, 67 S.Ct. 1129, 91 L.Ed. 1375; Ludecke v. Watkins, 335 U.S. 160, 68 S.Ct. 1429, 92 L.Ed. 881.

4. 64 Stat. 798, 799, 50 U.S.C.A.Appendix, § 2062.

5. Yakus v. United States, 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834; Bowles v. Willingham, 321 U.S. 503, 64 S.Ct. 641, 88 L.Ed. 892.

and, therefore, no cause of action could be predicated thereon. A consideration of this contention requires an additional statement of facts. It appeared at the hearing on the motion to dismiss that the court had some time prior thereto dismissed a criminal case against Excel pending in the same court "based upon alleged violations of a regulation of the Office of Price Stabilization known as Distribution Regulation Number 2, usually referred to simply as DR 2." In the order dismissing the criminal information the trial court certified that the judgment of dismissal rested entirely upon its construction of Titles I and VII of the Act. DR 2 was a regulation which had for its purpose the allocation of quotas of meat for distribution and sale and established a record keeping system for the purpose of its enforcement. It also provided a uniform system for grading of carcasses and wholesale cuts of meat. It defined many grades of beef. There is no question but that the trial court had jurisdiction to entertain the criminal case, consider the validity of DR 2 under Titles I and VII of the Act and enter judgment, and for the purposes of this appeal the court's finding of the invalidity of DR 2 must be conceded.

Regulation Number 24 is a comprehensive one, drawn under Title IV of the Act. It established maximum prices for various grades of meat. It described many grades of meat generally, such as top sirloin, short rib, round short rib, etc. As further designation and identification of various cuts of meat set out it provides that "Beef means meat graded as beef pursuant to the provisions of Distribution Regulation No. 2 and in accordance with the 'Official United States Standards for Grades of Carcass Beef' of the United States Department of Agriculture" and "Grades mean the uni-

form grades required under Distribution Regulation No. 2."

■ It is contended that DR 2 is an integral part of Regulation 24 and that, since DR 2 has been declared invalid, Regulation 24 falls of its own weight. It does not necessarily follow that since DR 2 has been declared a nullity the same fate awaits Regulation 24. Incorporation by reference is a principle well recognized in law[6]. The grades described in DR 2 were incorporated into Regulation 24 for the purpose of definition and identification. In any event it is not, however, necessary to determine the validity or Regulation 24 in this proceeding because we think the district court was without jurisdiction to entertain that question. It is conceded that Title IV of the Act under which Regulation 24 was promulgated conferred authority for the promulgation of such price regulations. The forum in which the legality of such regulations may be challenged is set out in Sections 407 and 408 of the Act, 50 U.S.C.A.Appendix, Sections 2107 and 2108. These Sections give the Emergency Court of Appeals and the Supreme Court, upon review of judgment and orders of the Emergency Court of Appeals, exclusive jurisdiction to determine the validity of any order or regulations promulgated under Title IV of the Act. Section 408 specifically provides "Except as provided in this section, no court, Federal, State, or Territorial, shall have jurisdiction or power to consider the validity of any such regulation or order * * *, or to stay, restrain, enjoin, or set aside, in whole or in part, any provision of this title * * *." Whether Regulation 24 was rendered inoperative by the trial court's previous decision declaring DR 2 void or whether the provisions of DR 2 setting out designated grades of beef in DR 2 were invalidly incorporated into Regula-

---

6. In re Heath, 144 U.S. 92, 12 S.Ct. 615, 36 L.Ed. 358; Kendall v. United States ex rel. Stokes, 12 Pet. 524, 37 U.S. 524, 9 L.Ed. 1181; Johnson v. Grand Fraternity, 8 Cir., 255 F. 929; Orleans Horn- silver Min. Co. v. Le Champ D'Or French Gold Min. Co., 52 Nev. 92, 284 P. 307, 289 P. 805; Shanks v. Wilson, D.C., 86 F.Supp. 789.

tion 24 are questions properly reserved for the Emergency Court of Appeals, providing the trial Court finds adversely to Excel in the enforcement proceeding and Excel deems it expedient to file a complaint in that court. The district court was without jurisdiction to consider these questions. The motion to dismiss should have been overruled.

The judgment appealed from is, therefore, reversed and the cause is remanded to proceed to trial upon the merits.