UNITED STATES of America, Appellant,

v.

DIX BOX CO. and Benjamin Dix, doing business as Dix Box Co., Appellee.

UNITED STATES of America, Appellant,

v.

Helen CARVAJAL, Appellee.

Nos. 14432 (and consolidated cases Nos. 14432–14440 and Nos. 14442– 14446), 14441.

United States Court of Appeals Ninth Circuit.

March 31, 1956.

Warren E. Burger, Asst. Atty. Gen., John J. Cound, Samuel D. Slade, Attorneys, Department of Justice, Washington, D. C., Laughlin E. Waters, U. S. Atty., Max F. Deutz, James R. Dooley, Asst. U. S. Attys., Los Angeles, Cal., for appellant.

Richard Allan Weiss, Los Angeles, Cal., for appellee Helen Carvajal.

Lillie & Bryant, Walter M. Campbell, Jr., Los Angeles, Cal., for other appellees.

Before STEPHENS, FEE, and CHAMBERS, Circuit Judges.

STEPHENS, Circuit Judge.

This is an appeal from a judgment of the District Court for the Southern District of California, Central Division, in favor of appellees in an action for damages instituted by the United States against each of the defendant-appellees here involved for violation of Ceiling Price Regulation 142 during the period May 5, 1952, and January 31, 1953.[1]

1. Fifteen actions in all were instituted. The defendants in fourteen of these ac-

tions agreed, with the consent of this court, that the appeals in their cases

Ceiling Price Regulation 142 was issued under the authority of the Defense Production Act of 1950, as amended, 50 U.S.C.A.Appendix, § 2061 et seq.

Each of the appellees here involved was engaged during the period in question in purchasing, reconditioning, and then selling used agricultural containers in the Southern California area. Pursuant to authority vested in the President of the United States by the Defense Production Act of 1950,[2] and by him delegated to the Director of Price Stabilization, ceiling prices for the appellees' sales of used agricultural containers were originally fixed at the highest prices obtainable by them between December 20, 1950, and January 19, 1951, as provided by the General Ceiling Price Regulation.[3]

The business of the appellees was subject to seasonal variation, and this base period fell within a slack season. The appellees filed a protest with the Office of Price Stabilization in Washington, D.C., complaining that the prices which they had obtained during this base period did not properly reflect their business. In consequence, the O.P.S. pursuant to the General Ceiling Price Regulation, issued Order L–117 on June 28, 1951, setting revised ceiling prices for certain of the goods sold by the appellees. The testimony of the appellees was that the net effect of Order L–117 was to enable them to operate at a reasonable profit once again.

On April 29, 1952, the O.P.S. issued Ceiling Price Regulation No. 142,[4] which superseded the General Ceiling Price Regulation with respect to the transactions covered, and established new ceiling upon both the prices which the appellees might charge and the prices which the retailers who sold them to them might receive. Shortly thereafter, five of the appellees, acting as representatives of all, had various discussions and meetings with officials of the Los Angeles office of the O.P.S., extending over the entire period in question. It was the position of the appellees during these meetings, that the result of C.P.R. 142 was to make it unprofitable for them to continue in business.

The trial court found that at each of these meetings there was agreement between the O.P.S. officials and the appellees that the prices established by C.P.R. 142 resulted in lowering the margin of gross profit to the dealer to such an extent that it would require operation at a net loss and that the Los Angeles office would make the necessary investigations and recommendations to Washington to have the regulation amended. The appellees were informed that it might be helpful but would not be necessary for them to hire attorneys.

The appellees stated to the Los Angeles officials that they would continue to operate under Order L–117 rather than C.P.R. 142, and in fact did so operate. Two of the appellees testified that they had not been told they could continue under L–117 and that they likewise had not been told they could not. There was no written permission given by the officials to the appellees to continue to operate under L–117 rather than C.P.R. 142. However, one of the officials admitted in the trial court that he said in response to a query from one of the appellees as to the effect of C.P.R. 142, something like "Don't worry about it, there aren't enough handcuffs to put you all in jail, we aren't going to put you in jail, and we'll see what we can do about getting it straightened out for you." One appellee testified that he was told that "it was all right to use L–117", but was unable to state whom it was who told him. At

would be consolidated for argument and briefing on a single printed record. (Case No. 14,432). The defendant in the fifteenth case (No. 14,441) consented with the approval of this court, to the filing of a single brief by the United

2. 64 Stat. 798, 50 U.S.C.A.Appendix, § 2061 et seq.

3. 16 F.R. 808 (Jan. 30, 1951); 5424 (June 8, 1951).

4. 17 F.R. 3822.

no time did the O.P.S. prior to the filing of the complaint by the government inform the appellees that they were going to be prosecuted.

The government subsequently brought suit in the district court seeking treble damages against all the appellees for violation of C.P.R. 142. A trial by jury was waived and Westover, district judge, gave judgment in favor of appellees, and held:

(1) Ceiling Price Regulation No. 142 was void and of no force and effect whatsoever by reason of the fact that the regulation was arbitrary and that no effort was made by the Office of Price Stabilization to comply with the provisions of Title 50 U.S.C.A.Appendix, § 2104 in advising or consulting with members of the Industry with respect thereto.

(2) That the President of the United States and those to whom he had delegated authority were estopped from enforcing the provisions of Ceiling Price Regulation 142 by reason of the conduct, promises, expressed and implied, by said officials.

(3) The court found in favor of appellee Carvajal for the above two reasons and as well held that Carvajal was not a "dealer" within the meaning of Section 12b of Ceiling Price Regulation 142 and thus was not covered by the regulation.

From that decision this appeal is taken.

Appellant, United States of America, argues for a reversal on the following grounds:

First, that the district court was without power to declare C.P.R. 142 void and of no force and effect, because exclusive jurisdiction to determine the validity of such a regulation rests with the Emergency Court of Appeals, and on review therefrom, with the Supreme Court.

Second, that the President of the United States and those to whom he delegated authority under the Defense Production Act were not estopped from enforcing C.P.R. 142 by the alleged statements and actions of the Los Angeles representatives of the Office of Price Stabilization.

Third, as to appellee Carvajal, the United States argues that she was a "dealer" within the general meaning and purpose of C.P.R. 142, and therefore subject to the regulation.

We agree with the government that the district court did not have jurisdiction to declare C.P.R. 142 void. Section 408(d), as amended, 50 U.S.C.A.Appendix § 2108(d), of the Defense Production Act, states:

"The Emergency Court of Appeals, and the Supreme Court upon review of judgments and orders of the Emergency Court of Appeals, shall have exclusive jurisdiction to determine the validity of any regulation or order, relating to price controls issued under this title. * * * Except as provided in this section, no court, Federal, State, or Territorial, shall have jurisdiction or power to consider the validity of any such regulation or order relating to price controls, or to stay, restrain, enjoin, or set aside, in whole or in part, any provision of this title * * * authorizing the issuance of such regulations or orders, or any provision of any such regulation or order, or to restrain or enjoin the enforcement of any such provision."

For cases construing this provision and like provisions see: United States v. Excel Packing Co., 10 Cir., 210 F.2d 596; Bowles v. American Brewery, Inc., 4 Cir., 146 F.2d 842 (CA 4); Bowles v. Wheeler, 9 Cir., 152 F.2d 34; Superior Packing Co. v. Porter, 8 Cir., 156 F.2d 193; Rosenweig v. United States, 9 Cir., 144 F.2d 30; United States v. Walton Motors, D.C., 114 F.Supp. 83.

Since the court, without jurisdiction, declared the operative regulation void and held that the President and his delegates were estopped from enforcing it,

and proceeded to decide the issues in the case upon those clearly erroneous rulings, it is unnecessary for us to go further.

Perhaps the rank unfairness of the action swayed the trial judge, and we add, with emphasis, that the advisability of further maintaining the case in court should be very seriously considered by the Attorney General of the United States.

Reversed and remanded.