**MONARCH LIFE INSURANCE COM-PANY, Plaintiff.**

v.

**LOYAL PROTECTIVE LIFE INSUR-ANCE COMPANY, Defendant.**

United States District Court
S. D. New York.

May 8, 1963.

Lord, Day & Lord, New York City, for plaintiff; John W. Castles, New York City, of counsel.

Alexander & Green, New York City, for defendant; Donald M. Dunn, New York City, of counsel.

LEVET, District Judge.

The defendant, Loyal Protective Life Insurance Company (Loyal), moves pursuant to Rule 12(b), Fed.R.Civ.P., to dismiss this action for lack of jurisdiction of the subject matter.

The complaint seeks treble damages from the defendant for the latter's violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. It alleges that both the plaintiff and the defendant are Massachusetts insurance companies licensed to and doing business in the State of New York; that both are in competition in the sale of accident and health insurance in interstate commerce throughout the United States; and that the defendant and a former general agent of the plaintiff conspired to illegally eliminate, restrain and boycott the plaintiff. Jurisdiction is alleged on the existence of a federal question and the amount in controversy, 28 U.S.C. §§ 1331 and 1337; Section 4 of the Clayton Act, 15 U.S.C. § 15, and Section 3(b) of the McCarran Ferguson Act, 15 U.S.C. § 1013(b).

A brief history of the statutory background is necessary to give a setting to the jurisdictional question posed. As part of the original Sherman Act, Congress enacted in 1890 Section 7 (26 Stat. 210), which provided jurisdiction and venue for private treble damage actions for violations of the Sherman Act. Thereafter, in 1914, Congress enacted the Clayton Act (38 Stat. 730) "[t]o supplement existing laws against unlawful restraints and monopolies, and for other purposes." Section 4 of that Act (38 Stat. 731) provided "[t]hat any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent,

without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee."

Prior to 1944, the Supreme Court had held that the issuance of an insurance policy was not commerce (Paul v. Virginia, 8 Wall. 168, 19 L.Ed. 357 (1868); Hooper v. People of State of California, 155 U.S. 648, 654–655, 15 S.Ct. 207, 39 L.Ed. 297 (1895); New York Life Ins. Co. v. Deer Lodge County, 231 U.S. 495, 503–504, 34 S.Ct. 167, 58 L.Ed. 332 (1913)), and the several states retained the sole authority to regulate the insurance industry (see Prudential Ins. Co. v. Benjamin, 328 U.S. 408, 414–416, 66 S.Ct. 1142, 90 L.Ed. 1342 (1946)).

However, in 1944, the Supreme Court in United States v. South-Eastern Underwriters Ass'n, 322 U.S. 533, 64 S.Ct. 1162, 88 L.Ed. 1440, decided that a fire insurance company which conducted a substantial part of its business across state lines is engaged in "commerce among the several states" and subject to regulations by Congress under the Commerce Clause (id. at 539, 64 S.Ct. at 1166) and that Congress did not intend that the business of insurance should be exempt from the operation of the Sherman Act (id. at 553, 560, 64 S.Ct. at 1173, 1177).

In response to that decision, Congress in 1945 passed an Act, "[t]o express the intent of the Congress with reference to the regulation of the business of insurance." (59 Stat. 33 (1945), 15 U.S.C. §§ 1011–1015, hereinafter the "McCarran Act"), which provided in part:

"Congress hereby declares that the continued regulation and taxation by the several States of the business of insurance is in the public interest, and that silence on the part of the Congress shall not be construed to impose any barrier to the regulation or taxation of such business by the several States. [15 U.S.C. § 1011]

"Sec. 2. (a) The business of insurance, and every person engaged

therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business.

"(b) No act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance: *Provided*, That after January 1, 1948, the Act of July 2, 1890, as amended, known as the Sherman Act, and the Act of October 15, 1914, as amended, known as the Clayton Act, and the Act of September 26, 1914, known as the Federal Trade Commission Act, as amended, shall be applicable to the business of insurance to the extent that such business is not regulated by State law. [15 U.S.C. § 1012]

"Sec. 3. (a) Until January 1, 1948, the Act of July 2, 1890, as amended, known as the Sherman Act, and the Act of October 15, 1914, as amended, known as the Clayton Act, and the Act of September 26, 1914, known as the Federal Trade Commission Act, as amended, and the Act of June 19, 1936, known as the Robinson-Patman Anti-discrimination Act, shall not apply to the business of insurance or to acts in the conduct thereof.

"(b) Nothing contained in this Act shall render the said Sherman Act inapplicable to any agreement to boycott, coerce, or intimidate, or act of boycott, coercion, or intimidation. [15 U.S.C. § 1013]

"Sec. 4. Nothing contained in this Act shall be construed to affect in any manner the application to the business of insurance of the Act of July 5, 1935, as amended, known as the National Labor Relations Act, or the Act of June 25, 1938, as amended, known as the Fair Labor Standards Act of 1938, or the Act of June 5, 1920, known as the Merchant Marine Act, 1920. [15 U.S.C. § 1014]." [1]

Under Section 2(b) of the McCarran Act Congress specifically provided that the Sherman Act, the Clayton Act and the Federal Trade Commission Act shall not be applicable to the business of insurance in states where that business is regulated by state law. There was, however, a retention of federal jurisdiction in Section 3(b) to the effect that nothing in the McCarran Act shall prevent the applicability of the Sherman Act to any act or agreement of boycott, coercion or intimidation.

There is no question but that the State of New York regulates the business of insurance. See N.Y.Insurance Law, McK.Consol.Laws, c. 28 and N.Y. General Business Law, § 340, McK.Consol. Laws, c. 20. Consequently, the pro tanto repeal of the Sherman, Clayton and Federal Trade Commission Acts provided for in Section 2(b) is effective in New York and applicable to this case, subject only to the exceptions specified in Section 3(b) of the Act.

On July 7, 1955, Congress repealed Section 7 of the Sherman Act which, prior to that time, had provided for private treble damage actions for violations of the Sherman Act (69 Stat. 283 (1955)).

### DEFENDANT'S CONTENTIONS

Loyal contends "(1) that Section 2(b) of the McCarran Act repeals the Sherman and Clayton Acts with respect to the insurance industry to the extent that this industry had been regulated by State law; (2) that Section 3(b) of the McCarran Act makes only the Sherman Act applicable to cases involving boycott, coercion, or intimidation, despite the repeal effected by Section 2(b); (3) that Section 4 of the Clayton Act, which provides a private treble damage remedy, is not made applicable to boycott viola-

1. Section 2(b) and Section 3(a) were amended on July 25, 1947 (61 Stat. 448) to extend the moratorium to June 30, 1948.

tions of the Sherman Act by Section 3(b) of the McCarran Act; (4) that Congress in repealing in 1955 Section 7 of the Sherman Act, which also provides a private treble damage remedy for Sherman Act violations, intended to confine suits under Section 3(b) of the McCarran Act to suits brought by the government, and to deprive private plaintiffs of the treble damage remedy and other civil remedies; and (5) that consequently since 1955 there has been no statutory basis for this court to award treble damages under Section 4 of the Clayton Act in actions based on Section 3(b) of the McCarran Act brought by private plaintiffs."

The apparent conflict between the lack of any jurisdictional basis in the Sherman Act for private treble damage actions alleging boycott in the insurance industry since the repeal of Section 7 and the continued applicability of the Sherman Act by virtue of Section 3(b) of the McCarran Act poses the jurisdictional issue in this case. The issue may be presented in three questions:

1. Does this court have jurisdiction under Section 3(b) of the McCarran Act?

2. Does Section 4 of the Clayton Act provide jurisdiction in spite of the Clayton Act's express inapplicability by the terms of Section 2(b) of the McCarran Act?

3. Absent jurisdiction under the specific provisions of the Sherman, Clayton and McCarran Acts, does this court have jurisdiction under 28 U.S.C. §§ 1331 and 1337?

## I.

### JURISDICTION UNDER SECTION 3(b) OF THE McCARRAN ACT

The only method by which Section 3(b) of the McCarran Act would provide jurisdiction of this cause is if it adopted by its terms Section 7 of the Sherman Act and thus have given to Section 7 post-repeal efficacy.

### 1. ADOPTION

■ It is well established that, absent a contrary intent of the legislature, the adoption or incorporation of a statute by reference is an adoption of the law as it existed at the time the adopting statute was enacted and is unaffected by any subsequent amendment or repeal of the statute adopted. Hassett v. Welch, 303 U.S. 303, 58 S.Ct. 559, 82 L.Ed. 858 (1938); United States ex rel. Kessler v. Mercur Corp., 83 F.2d 178 (2 Cir.), cert. denied 299 U.S. 576, 57 S.Ct. 40, 81 L.Ed. 424 (1936). See also Annot. 168 A.L.R. 627; Annot. 2 L.Ed.2d 2048. But at issue here is not the general rule nor any of its exceptions, but simply whether there was an adoption or incorporation by reference.

■ Whether there was or not is, of course, determined by the intent of the legislature. The starting point is the statute itself, which provides: "[n]othing contained in this Act shall render the said Sherman Act inapplicable to any agreement to boycott, coerce, or intimidate, or act of boycott, coercion, or intimidation." Is this an incorporation or adoption of the Sherman Act as it stood in 1945?

The language itself does not evidence an intent to adopt. This conclusion is supported by a comparison of the language in other cases where federal courts have held a statutory adoption. In each of these, the language itself evidenced a legislative intent to make the adopted statute an integral part of the adopting statute and rather than inserting a verbatim repetition of the adopted statute the legislative shorthand of incorporation by reference or adoption was employed.

Thus, in Kendall v. United States ex rel. Stokes, 12 Pet. 524, 9 L.Ed. 1181 (1838) one of the issues was the power of the then Circuit Court of the District of Columbia to issue the writ of mandamus to a public officer under the language "all the powers by law vested in the circuit courts and the judges of the circuit courts of the United States." (2 Stat. 103 (1801)) The court held that the language quoted adopted the Act of February 13, 1801 (2 Stat. 89), notwithstanding its subsequent repeal on March 8, 1802. (2 Stat. 132 (1802)). See also

In re Heath, 144 U.S. 92, 12 S.Ct. 615, 36 L.Ed. 358 (1892).

In Hassett v. Welch, 303 U.S. 303, 58 S.Ct. 559, 82 L.Ed. 858 (1938) the language "whether made, created, arising, existing, exercised, or relinquished before or after the enactment of this Act" (Section 302(h) Int.Rev.Code of 1926) was held to have adopted the law as it existed prior to a 1931 amendment.

Similarly, in United States ex rel. Kessler v. Mercur Corp., 83 F.2d 178 (2 Cir.), cert. denied 299 U.S. 576, 57 S.Ct. 40, 81 L.Ed. 424 (1936), at issue was Rev.Stat. § 3490, which provided "who shall do or commit any of the acts prohibited by any of the provisions of section fifty-four hundred and thirty eight." The court held that notwithstanding the subsequent amendment and repeal of Rev.Stat. § 5438, the incorporating statute (Rev.Stat. § 3490) was to be read as if Rev.Stat. § 5438 was not amended or repealed. See also, United States v. Rainwater, 244 F.2d 27 (8 Cir. 1957), aff'd 356 U.S. 590, 78 S.Ct. 946, 2 L.Ed.2d 996 (1958); United States v. McNinch, 242 F.2d 359 (4 Cir.), modified, 356 U.S. 595, 78 S.Ct. 950, 2 L.Ed.2d 1001 (1957); United States ex rel. Boyd v. McMurtry, 5 F.Supp. 515 (W.D.Ky. 1933); Olson v. Mellon, 4 F.Supp. 947 (W.D.Pa.1933), aff'd sub. nom. United States ex rel. Knight v. Mellon, 71 F.2d 1021 (3 Cir.), cert. denied 293 U.S. 615, 55 S.Ct. 147, 79 L.Ed. 704 (1934).

In Young v. United States, 178 F.2d 78 (9 Cir. 1949), cert. denied 339 U.S. 913, 70 S.Ct. 573, 94 L.Ed. 1339 (1950), the language at issue was that of then 38 U.S.C. § 697: "Except as otherwise provided in this chapter, the administrative, definitive, and penal provisons under sections * * *, 712–715, * * * of this title, shall be for application under this chapter." Again, the language of the incorporating statute made it clear that the incorporated statute was to become an integral part. In United States v. Excel Packing Co., 210 F.2d 596 (10 Cir.), cert. denied 348 U.S. 817, 75 S.Ct. 28, 99 L.Ed. 664 (1954), the language was equally clear: "Beef means meat graded as beef pursuant to the provisions of Distribution Regulation No. 2 * *." And, in Yarborough v. United States, 230 F.2d 56 (4 Cir.), cert. denied 351 U.S. 969, 76 S.Ct. 1034, 100 L.Ed. 1487 (1956), the court held incorporation by reference by the language "all provisions of law, including penalties, applicable with respect to the tax imposed by section 1400."

█ In this case, however, the exact converse is true. The language of Section 3(b) makes clear the Congressional desire that certain provisions of the Sherman Act were not to be part of the McCarran Act, but, rather, were to remain separate and apart. Section 3(b) of the McCarran Act was not an *adoption* of the Sherman Act. It merely provided that the Sherman Act should continue *applicable* to acts of boycott, coercion and intimidation if practiced in the insurance industry. Thus, by the McCarran Act, certain statutes were inapplicable to the insurance business while the applicability of the Sherman Act to the activities of boycott, coercion and intimidation was continued. This it seems is a far cry from adoption. The McCarran Act did not "adopt" any Act or any section.

This conclusion seems all but inescapable when reference is made to Section 4 of the McCarran Act, which provides: "Nothing contained in this Act shall be construed to affect in any manner the application to the business of insurance * * * the National Labor Relations Act, * * * the Fair Labor Standards Act * * * or * * * the Merchant Marine Act * * *." The similarity of this language with that of Section 3(b) is remarkable.

The Congressional intent appears to have been the same. The Report of the Senate Judiciary Committee, commenting on what was to become Section 4 of the Act, stated:

"Section 5 provides that the enactment of this Act shall not affect, in any manner, the present application of the National Labor Relations Act, or the Fair Labor Standards Act, to

the business of insurance." S.Rep. 20, 79th Cong., 1st Sess. 3 (1945).

Similarly, with respect to what was to become Section 3(b) of the Act, both the Senate and House Reports noted:

"(b) provides that at no time are the prohibitions in the Sherman Act against any act of boycott, coercion or intimidation suspended. These provisions of the Sherman Act remain in full force and effect." H.R. Rep. No. 143, 79th Cong., 1st Sess. (1945); S.Rep. No. 20, 79th Cong., 1st Sess. (1945).

There is no indication whatsoever that Congress in Section 4 intended to freeze the rights of those employed in the insurance business under the National Labor Relations Act or the Fair Labor Standards Act to the then-existing provisions. Such would be the complete antithesis of the Congressional desire.

■ The Congressional desire is both Sections 3(b) and 4 was the same; namely, to insure the continued applicability of certain federal legislation, notwithstanding the broad language of Section 2(b). Neither was an adoption or incorporation by reference.

Reference, therefore, in the McCarran Act to the Sherman Act is not equivalent to adoption or incorporation. Obviously, reference may be made to laws other than for the purpose of incorporating or adopting the provisions of the law referred to. (See 82 C.J.S. Statutes § 71, at p. 125) The limitations on the Sherman Act with respect to its applicability or non-applicability to the insurance business do not equal incorporation of that Act into the McCarran Act.

## 2. REPEAL OF SECTION 7 OF THE SHERMAN ACT

At the time of the enactment of the McCarran Act in 1945, the existing Section 7 of the Sherman Act was as follows:

"Any person who shall be injured in his business or property by any other person or corporation by reason of anything forbidden or declared to be unlawful by this act, may sue therefor in any circuit court of the United States in the district in which the defendant resides or is found, without respect to the amount in controversy, and shall recover three fold the damages by him sustained, and the costs of suit, including a reasonable attorney's fee."

Section 7 of the Sherman Act was repealed by the Act of July 7, 1955 (69 Stat. 283). Since it was not adopted by the McCarran Act, the repeal ended its effectiveness. It should be noted that in its complaint, plaintiff does not mention Section 7 of the Sherman Act. Instead, it relies on (a) Section 1 of the Sherman Act (15 U.S.C. § 1); (b) Section 4 of the Clayton Anti-Trust Act (15 U.S.C. § 15); and (c) Section 3(b) of the McCarran Act (15 U.S.C. § 1013(b)). (See par. 1 of complaint.)

■ It is my opinion, therefore, that Section 7 of the Sherman Act was repealed for all purposes and does not survive by reason of any reference to the Sherman Act contained in the McCarran Act.

This construction of the McCarran Act does not render meaningless the reservation contained in Section 3(b). Under Section 3(b) the federal government may continue to prosecute both civil and criminal actions for acts of boycott, coercion and intimidation in the insurance industry under Sections 1, 2 and 4 of the Sherman Act, 15 U.S.C. §§ 1, 2 and 4.[2]

Because of these conclusions I am forced to disagree with the only other

---

2. See, e. g., United States v. Insurance Board of Cleveland, 144 F.Supp. 684 (N. D.Ohio 1956) (boycotts) and D.C., 188 F.Supp. 949 (1960) (coercion and boycott); United States v. New Orleans Insurance Exchange, 148 F.Supp. 915 (E. D.La., 1957) (boycotts), aff'd 355 U.S. 22, 78 S.Ct. 96, 2 L.Ed.2d 66 (1957). See also In re Aviation Insurance Industry, 183 F.Supp. 374 (S.D.N.Y.1960). For several unreported cases see, Bicks, A Federal Outlook, 18 Record Ass'n Bar N.Y.C. 181, 189 (1963).

case dealing with this question, Professional & Business Men's Life Ins. Co. v. Bankers Life Co., 163 F.Supp. 274 (D.Mont.1958).[3] While the court in the Professional case held that there had been an adoption of Section 7 by Section 3(b) of the McCarran Act, it also noted that (1) diversity of citizenship existed (163 F.Supp. at 286); (2) the acts in question occurred prior to the effective repeal date of Section 7 of the Sherman Act and as to them Section 7 remains effective by virtue of 1 U.S.C. § 109; (3) the court stated that "there is no jurisdiction in this case by virtue of any provisions of the Clayton Act," and (4) "The Court experienced some doubt as to whether a private civil suit for treble damages was saved by the exception to the McCarran Act contained in Section 3(b) thereof." 163 F.Supp. at 283.

Accordingly, I conclude that Section 3(b) did not adopt or incorporate by reference Section 7 of the Sherman Act and, therefore, Section 3(b) provides no jurisdictional basis for the plaintiff's action.

## II.

## JURISDICTION UNDER SECTION 4 OF THE CLAYTON ACT

Section 4 of the Clayton Act, 15 U.S.C. § 15, provides jurisdiction and venue for violations of the "anti-trust laws" which by definition includes the Sherman Act, 15 U.S.C. § 12. The plaintiff contends that since Section 3(b) of the McCarran Act makes applicable Section 1 of the Sherman Act and jurisdiction is provided for Sherman Act violations under Section 4 of the Clayton Act, Section 4 of the Clayton Act provides jurisdiction since it does not "invalidate, impair, or supersede any law enacted by any State * * *."

The difficulties with this contention are twofold: first, it proceeds on an erroneous conclusion as to the Congressional intent, and, second, it violates the plain words of Section 2(b) of the McCarran Act.

■■ The plaintiff's contentions proceed on the assumption that it was the Congressional intent only to invalidate those federal statutes which according to Section 2(b) of the McCarran Act "invalidate, impair, or supersede any [State] law." This is precisely what Congress' intention was not. Section 1 of the McCarran Act makes more than abundantly clear that Congress' intent was to allow "the continued regulation and taxation by the several States of the business of insurance" save only for those particular federal statutes expressly made applicable by Sections 3(b) and 4.

The second difficulty is that by the terms of Section 2(b) of the McCarran Act the Clayton Act is expressly rendered inapplicable to the business of insurance where state regulation exists. Section 3(b) saves from this exclusion only the Sherman Act relating to boycotts, coercion or intimidation. If the plaintiff's construction were to be followed it would necessitate this court to judicially amend Section 3(b) to include the Clayton Act. Such a judicial rewriting is clearly not warranted.

It is true, as the plaintiff contends, that Section 7 of the Sherman Act was repealed in 1955 because Congress considered it surplusage in view of the broader provisions of Section 4 of the Clayton Act. The Senate Report (S.Rep. No. 619, 84th Cong., 1st Sess. (1955) (to accompany H.R. 4954) states:

"Since the Clayton Act's section 4 is more comprehensive, section 7 of the Sherman Act is considered to be no longer necessary." U.S.Code Cong. and Admin.News 1955, p. 2329.

---

3. California League of Independent Insurance Producers v. Aetna Cas. & Surety Co., 175 F.Supp. 857 and 179 F.Supp. 65 (N.D.Calif.1959), related to sufficiency of pleading a boycott, etc. rather than the jurisdictional points raised by defendant here.

Similarly, H.R. Rep. No. 422, 84th Cong., 1st Sess. (1955) (to accompany H.R. 4954) states at page 2:

"Section 3 of the bill repeals section 7 of the Sherman Act inasmuch as that section has long been superseded by section 4 of the Clayton Act. The two sections are virtually identical except that the latter provision authorizes private treble damage suits for violation of the antitrust laws as defined by section 1 of the Clayton Act, whereas the former statute authorizes such suits only for violations of the Sherman Act itself. At the present time, section 7 of the Sherman Act no longer appears in the United States Code and in prior compilations of Federal laws was considered as having been replaced by section 4 of the Clayton Act. Since the language in the proposed bill is broad enough, referring as it does to injuries 'by reason of anything forbidden in the antitrust laws', to make section 7 of the Sherman Act unnecessary, it is deemed advisable explicitly to repeal section 7 of the Sherman Act."

The legislative reasoning thus expressed appears to be that (1) Section 7 of the Sherman Act and Section 4 of the Clayton Act "are virtually identical except that the latter provision authorizes private treble damage suits for violation of the antitrust laws as defined by section 1 of the Clayton Act, whereas the former statute authorizes such suits only for violations of the Sherman Act itself"; (2) that at the present time, Section 7 of the Sherman Act no longer appears in the United States Code and in prior compilations of Federal laws was considered as having been replaced by section 4 of the Clayton Act; (3) that

"Since the language in the proposed bill is broad enough, referring as it does to injuries 'by reason of anything forbidden in the antitrust laws', to make section 7 of the Sherman Act unnecessary, it is deemed advisable explicitly to repeal section 7 of the Sherman Act." Nowhere in the House Report, supra, the Senate Report, supra, the House Debates (101 Cong.Rec. 5129–5134 (1955)) or the Senate Debates (101 Cong.Rec. 9165–9166 (1955)) is there even a remote indication that the McCarran Act was considered or that the repeal was occasioned by a Congressional desire to preserve only governmental sanctions under Section 3(b) of the McCarran Act.

This court's function is not, however, to rewrite Section 3(b) to include the Clayton Act. This court must take the statute as it finds it and "[a]n omission at the time of enactment, whether careless or calculated, cannot be judicially supplied however much later wisdom may recommend the inclusion." [4]

Accordingly, Section 4 of the Clayton Act does not provide jurisdiction for the plaintiff's action.

## III.

## JURISDICTION UNDER 28 U.S.C. §§ 1331, 1337

The plaintiff also seeks to premise jurisdiction on the existence of a federal question and the requisite amount, 28 U.S.C. § 1331,[5] or on an act of Congress regulating commerce, 28 U.S.C. § 1337.[6]

The basis of any "arising under" jurisdiction is that the complaint, for jurisdictional purposes, must present a substantial claim having its source in and arising under a federal statute, International Ass'n of Machinists v. Cen-

---

4. Frankfurter, Some Reflections on the Reading of Statutes, 47 Colum.L.Rev. 527, 534 (1947).

5. 28 U.S.C. § 1331: "(a) The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs,

and arises under the Constitution, laws, or treaties of the United States."

6. 28 U.S.C. § 1337: "The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies."

tral Airlines Inc., 372 U.S. 682, 83 S.Ct. 956, 10 L.Ed.2d 67 (1963), or to use the words of Justice Holmes: "A suit arises under the law that creates the cause of action." American Well Works Co. v. Layne & Bowler Co., 241 U.S. 257, 36 S.Ct. 585, 60 L.Ed. 987 (1916). See, generally, Hart & Wechsler, The Federal Courts and the Federal System, 763–69 (1953).

It is difficult to imagine a federal question arising under a federal statute, here the McCarran Act, which expressly declares its purpose to be to render inapplicable to a particular industry certain federal statutes. The plaintiff apparently realizes that and contends that, since under Section 3(b) the criminal provisions of the Sherman Act remain applicable to acts of boycott in the insurance industry, the existence of these criminal sanctions impliedly gives rise to a civil action for their violation, citing Reitmeister v. Reitmeister, 162 F.2d 691 (2 Cir. 1947).[7]

In Reitmeister, Judge Learned Hand held that a civil action for violations of § 605 of the Federal Communications Act, 47 U.S.C. § 605, would lie, although the statute provided no express provision for civil relief and imposed only criminal sanctions, stating, 162 F.2d at 694:

"* * * Although the Act does not expressly create any civil liability, we can see no reason why the situation is not within the doctrine which, in the absence of contrary implications, construes a criminal statute, enacted for the protection of a specified class, as creating a civil right in members of the class, although the only express sanctions are criminal. * * *" (Emphasis supplied)

■ Here, the contrary implications are manifest. In the McCarran Act, Congress expressly limited violations of the Sherman Act to acts of boycott, coercion or intimidation. In 1955, when Congress repealed Section 7, it impliedly, although perhaps unwittingly, stated there was no longer to be any private civil remedies for violations of the Sherman Act in the insurance industry. There is, therefore, no jurisdiction of the plaintiff's cause under either 28 U.S.C. § 1331 or § 1337.

## CONCLUSION

Since Section 7 of the Sherman Act was repealed and not preserved by Section 3(b) of the McCarran Act (15 U.S.C. § 1013(b)) and since Section 4 of the Clayton Act (15 U.S.C. § 15) (although still applicable to Sherman Act offenses generally, i. e., other than insurance cases), is not applicable to the insurance industry under Section 3(b), I must conclude there is now no statute permitting a private civil action in the federal courts for acts or agreements of boycott in the insurance industry.

The net result is this:

■ 1. The United States may still prosecute both criminal and civil actions under the Sherman Act for agreements to boycott, coerce or intimidate in the insurance business;

■ 2. The federal courts under the Sherman Act do not have jurisdiction over private treble damage actions involving the insurance business (where state regulation exists) under the reservations of Section 3(b) of the McCarran Act (15 U.S.C. § 1013(b));

■ 3. The plaintiff is relegated to the state courts for relief from boycott, etc. when the insurance business has been regulated by state law, as in New York.

By reason of the foregoing, the motion of defendant to dismiss for lack of jurisdiction of the subject matter is granted. Settle order on notice.

7. The plaintiff does not contend that the treble damage remedy of Section 7 of the Sherman Act or Section 4 of the Clayton Act is applicable, but simply that under this jurisdictional basis compensatory damages may be awarded.