Clifton Ralph CRAMER, Petitioner-
Appellant,

v.

Jack H. WISE, Warden, Federal Correc-
tional Institute, Respondent-
Appellee.

No. 74–1174
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Oct. 3, 1974.

James C. Considine, Charles L. Tighe, Midland, Tex., for petitioner-appellant.

William S. Sessions, U. S. Atty., Jeremiah Handy, Asst. U. S. Atty., San Antonio, Tex., for respondent-appellee.

Before BROWN, Chief Judge, and THORNBERRY and AINSWORTH, Circuit Judges.

AINSWORTH, Circuit Judge:

Appellant Cramer was convicted in March, 1972, of 15 counts of mail fraud, and was sentenced to the custody of the Attorney General pursuant to 18 U.S.C. § 5010(b),[1] a provision of the Youth

---

* Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al., 5 Cir., 1970, 431 F.2d 409, Part I.

1. Section 5010 reads as follows:

(a) If the court is of the opinion that the youth offender does not need commitment, it may suspend the imposition or execution of sentence and place the youth offender on probation.

(b) If the court shall find that a convicted person is a youth offender, and the offense is punishable by imprisonment under applicable provisions of law other than this subsection, the court may, in lieu of the penalty of imprisonment otherwise provided by law, sentence the youth offender to the custody of the Attorney General for treatment and supervision pursuant to this chapter until discharged by the Division as provided in section 5017(c) of this chapter; or

(c) If the court shall find that the youth offender may not be able to derive maximum benefit from treatment by the Division prior to the expiration of six years from the date of conviction it may, in lieu of the penalty of imprisonment otherwise provided by law, sentence the youth offender to the custody of the Attorney

Corrections Act.[2] In addition, the district court imposed a fine in the sum of $10,000. Cramer subsequently brought this appeal under 28 U.S.C. § 2255 to vacate the $10,000 fine. In rejecting Cramer's claim that a fine is inconsistent with Youth Correction Act sentencing, the trial court cited Cramer's proceeds from his mail fraud activities ($90,000) and the broad discretion given district courts in sentencing matters in support of the propriety of the fine. The sole issue to be resolved is whether it is permissible for a court to impose monetary fines when sentencing a person under the Youth Corrections Act.[3]

This matter is one of first impression in the Fifth Circuit, and there have been only two cases which have considered the issue. In United States v. Hayes, 9 Cir., 1973, 474 F.2d 965, the defendants were convicted of possessing, with intent to distribute, approximately 18 pounds of marijuana. They were committed to the custody of the Attorney General for treatment and supervision under 18 U.S.C. § 5010(b) and fines of $2000 on one party and $1000 on the other were also imposed. The Ninth Circuit held that the monetary penalties were impermissible, concluding that YCA sentencing limited a judge to the options specified in the Act.

> The Federal Youth Corrections Act is an alternative sentencing provision. At the discretion of the judge a youth offender deemed treatable under the Act can be sentenced to treatment rather than punishment under the applicable penalty provision provided by law. A combination of rehabilitative treatment and retributive punishment is not intended and is improper. *See* United States v. Waters, 141 U.S. App.D.C. 289, 437 F.2d 722, 726 (1970).
>
> We conclude that a judge electing to commit a youth offender for treatment and supervision under the alternative sentencing provisions of the Federal Youth Corrections Act is foreclosed from imposing an additional punitive penalty under another provision.

*Hayes, supra,* 474 F.2d at 967.

In United States v. Waters, 1970, 141 U.S.App.D.C. 289, 437 F.2d 722, the defendant was convicted of three counts each of armed robbery and assault with a deadly weapon. The trial court sentenced him to 4 to 12 years for robbery and 3 to 9 years for assault (sentences to run concurrently), but at the same time "recommended" that defendant be placed in a youth institution. The D. C. Circuit found that the trial judge desired rehabilitative treatment for the youth, but also wanted to impose a penalty to act as a deterrent to other potential offenders. The court found this admixture improper, stating:

> [T]he statutory scheme does not envisage this particular combination of rehabilitation and deterrence. It appears that once it is determined that the convicted person is a youth offender (ages 18 to 22), then Congress

---

General for treatment and supervision pursuant to this chapter for any further period that may be authorized by law for the offense or offenses of which he stands convicted or until discharged by the Division as provided in section 5017(d) of this chapter.

(d) If the court shall find that the youth offender will not derive benefit from treatment under subsection (b) or (c), then the court may sentence the youth offender under any other applicable penalty provision.

(e) If the court desires additional information as to whether a youth offender will derive benefit from treatment under subsections (b) or (c) it may order that he be committed to the custody of the Attorney General for observation and study at an appropriate classification center or agency. Within sixty days from the date of the order, or such additional period as the court may grant, the Division shall report to the court its findings.

2. Act of Sept. 30, 1950, c. 1115, 64 Stat. 1086, 18 U.S.C. §§ 5005–5026.

3. A previous remand in this case found that the filing of notice of appeal 11 days late was the result of excusable neglect. *See* 494 F.2d 1185.

has decreed priority for the goal of rehabilitation. The objective of deterrence may be taken into account by the trial judge, not by overriding the statute's rehabilitation provisions, but rather by combining them with a sentence exposing the defendant to a maximum term greater than that called for in subsection (b). (Citations omitted)

*Waters, supra,* 437 F.2d at 726.

█ *Hayes* and *Waters* properly emphasize that the purposes of the Youth Corrections Act are rehabilitative in nature. The House Report on the Act stated that its purpose was to "cure rather than accentuate the anti-social tendencies that have led to the commission of crime." H.R.Rep.No.2979, 81st Cong., 2d Sess., 2 U.S.Code Cong.Serv., p. 3983 (1950). The Report noted further that the Act "departs from the mere punitive idea of dealing with criminals and looks primarily to the objective idea of rehabilitation." *Id.* at 3985. Thus, the Youth Corrections Act is an avowedly non-punitive, rehabilitative statute. The logical inconsistencies resultant from allowing punitive fines to be imposed when sentencing under the Act make a strong case for vacating this fine.

A fair argument can be made, however, for upholding the power to impose fines in connection with YCA sentences. The language of 18 U.S.C. § 5010(b)[4] provides that if a youthful offender is convicted of an offense "punishable by imprisonment under applicable provisions of law other than this subsection, the court may, in lieu of penalty of *imprisonment,* . . . sentence the youth offender to the custody of the Attorney General . . . ." (Emphasis added). By its terms the statute does not prohibit imposing monetary fines, but only precludes the imposition of the penalty of imprisonment when sentencing under the Act. In *Waters,* a *prison* sentence and rehabilitative measures were combined, and thus the court's conclusion

was mandated by the language of the statute. Here and in *Hayes,* however, the combination of fines and treatment under the YCA is not specifically precluded by the Act's language.

The Youth Corrections Act was derived from proposals forwarded by the Judicial Conference Committee on Punishment for Crime. The draft of the Conference's youth sentencing provision provided that:

[T]he court may, as a penalty for the offense and in lieu of the penalty *otherwise provided by law,* sentence the youth offender to the custody of the Authority for treatment and supervision until discharged . . . . (Emphasis added).

Draft of an Act Recommended by the Committee to Provide a Correctional System for Adult and Youth Offenders Convicted in Courts of the United States, Tit. III, § 1(a).

The Act as enacted, however, specifically precluded only the penalty of imprisonment, and did not adopt the Conference draft which would clearly have disallowed monetary fines as well. The Ninth Circuit in *Hayes* states that it is not clear why this change was made, but that there is nonetheless no indication that fines were permissible. *See* 474 F.2d at 967. It can reasonably be contended, however, that this action by Congress supports a contention that only the power to imprison (and not the power to impose fines) is precluded when sentencing under the Act.

This contention draws support from other parts of the legislative history, for it seems that what Congress most wanted to avoid was the unfortunate effects of commingling youths and hardened criminals. As the House Report noted:

By herding youth with maturity, the novice with the sophisticate, the impressionable with the hardened, and by subjecting youth offenders to the evil influences of older criminals and their teaching of criminal techniques,

4. *See* note 1, *supra.*

without the inhibitions that come from normal contacts and counteracting prophylaxis, many of our penal institutions actively spread the infection of crime and foster, rather than check; it.

H.R.Rep.No.2979, 81st Cong., 2d Sess., 2 U.S.Code Cong.Serv., pp. 3983, 3985 (1950). At another point, the Report expresses the hope that the Act "will avoid the degenerative and needless transformation of many of these young persons into habitual criminals." *Id.* at p. 3983. Thus, what Congress wanted may have been only to remove the penalty of imprisonment, for this penalty was found to be counter-productive.

◼ Thus, neither the statute's language nor the Act's legislative history directly opposes the conclusion reached by the district court. Moreover, we must recognize that appellate courts are loathe to review sentences, and that the sentencing process, absent exceptional circumstances or statutory or constitutional infirmity, has traditionally been within the sole province and discretion of the trial judge. *See* Blockburger v. United States, 1932, 284 U.S. 299, 305, 52 S.Ct. 180, 76 L.Ed. 306; United States v. McGhee, 5 Cir., 1974, 488 F.2d 781, 786; United States v. Pruitt, 4 Cir., 1965, 341 F.2d 700, 703–705 and cases cited n. 8; United States v. Rosenberg, 2 Cir., 195 F.2d 583, 604, cert. denied, 1952, 344 U.S. 838, 73 S.Ct. 20, 97 L.Ed. 652, reh. denied, 1952, 344 U.S. 889, 73 S.Ct. 134, 97 L.Ed. 687; Note, Appellate Review of Sentencing Procedure, 74 Yale L.J. 379, 380–81 (1964). The cumulation of these considerations militates against vacating the fine.

◼◼ We are of the opinion, however, that judges utilizing the Youth Corrections Act are limited to the options specified in the Act, and that fines may not be imposed on individuals sentenced under the Act. Initially, the clearly punitive fine imposed here is in-consistent with the expressed rehabilitative purposes of the Act. Secondly, a close reading of the statute itself refutes the result reached by the lower court. The provisions of 18 U.S.C. § 5010(a), (b)(c) and (d)[5] are progressive in nature and exclusive of each other. It would seem illogical to conclude that these detailed provisions, so obviously exclusive of each other, are not also exclusive of provisions not contained within the Act which the Act was designed to supplant.

◼ Finally, we conclude that doubts regarding the proper extent of sanctions must be resolved in favor of the individual, not the Government. It would offend traditional notions of justice to allow an individual to be subjected to harsh penalties on the *possibility* of propriety. As Mr. Justice Frankfurter noted:

When Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity. And this [is] not out of any sentimental consideration, or for want of sympathy with the purpose of Congress in proscribing evil or anti-social conduct. It may fairly be said to be a presupposition of our law to resolve doubts in the enforcement of a penal code against the imposition of a harsher punishment.

Bell v. United States, 1955, 349 U.S. 81, 83, 75 S.Ct. 620, 622, 99 L.Ed. 905; *see* Rewis v. United States, 1971, 401 U.S. 808, 812, 91 S.Ct. 1056, 1059, 28 L.Ed.2d 493; O'Clair v. United States, 1 Cir., 1972, 470 F.2d 1199, 1202–1203, cert. denied, 1973, 412 U.S. 921, 93 S.Ct. 2741, 37 L.Ed.2d 148.

For these reasons, we reverse the district court and remand with orders to vacate the $10,000 fine imposed on defendant.

*Reversed and remanded.*

5. *See* note 1, *supra.*