UNITED STATES of America,
Plaintiff-Appellee,

v.

Rebecca Ann SMITH,
Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Clifford Rickard ARTHUR,
Defendant-Appellant.

Nos. 80–1380, 80–1479.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 18, 1981.

Decided Aug. 10, 1982.

Mark E. Griffin, Portland, Or., for Smith and Arthur.

Sidney I. Lezak, U. S. Atty., Portland, Or., for United States; Charles Turner, Asst. U. S. Atty., Portland, Or., on brief.

Before BROWNING, CHOY, WALLACE, KENNEDY, ANDERSON, SKOPIL, PREGERSON, POOLE, FERGUSON, CANBY and BOOCHEVER, Circuit Judges.

PREGERSON, Circuit Judge:

These consolidated appeals, both arising in the District of Oregon, present the question whether a "split sentence" is lawful under the Youth Corrections Act ["YCA"], 18 U.S.C. §§ 5005—26, and, if so, whether the offender must be segregated from adults during confinement.

The appellant in No. 80–1380, Rebecca Ann Smith, was indicted in February 1980

on one count of embezzling funds from the federally-insured bank where she worked, in violation of 18 U.S.C. § 656. She entered a guilty plea, and was sentenced under the YCA, 18 U.S.C. § 5010(a). (Smith was twenty years old at the time of sentencing.) She received a five-year sentence, but on condition that she be "confined in a jail-type setting" for forty-five days,[1] execution of the remainder of the sentence was suspended and Smith was placed on five years' probation.

The appellant in No. 80–1479, Clifford Rickard Arthur, was indicted in March 1980 on one count of stealing two bicycles on the Warm Springs Indian Reservation, in violation of 18 U.S.C. §§ 1153 and 661. He entered a guilty plea, and was sentenced under the YCA.[2] (Arthur was nineteen years old at the time of sentencing.) He received a three-year sentence, but on condition that he serve thirty days "in a jail type institution," execution of the remainder of the sentence was suspended and Arthur was placed on five years' probation.

Both Smith and Arthur appeal their sentences. They concede that the YCA permits a trial court to suspend the execution of sentence and place the youth offender on probation. 18 U.S.C. § 5010(a). They contend, however, that it does not authorize the "split sentences" imposed here, in which a brief period of incarceration is made a condition of probation. The government replies that the YCA incorporates the general probation statute, 18 U.S.C. § 3651, which in turn explicitly allows split sentences. It further argues that a youth offender who is given such a split sentence may be incarcerated in an adult-type jail.

1. The court recommended incarceration on weekends in county jail.

2. The court did not state explicitly that the sentence was pursuant to the YCA, but did find that Arthur "will derive benefit from handling under the Federal Youth Corrections Act."

3. In addition to challenging the split sentences they were given, Smith and Arthur contend that the sentences which the trial courts imposed and suspended were improper because they were for determinate periods of five and

These issues have apparently not been addressed by other circuits. A panel of this circuit has held that the Supreme Court's opinion in *Durst v. United States*, 434 U.S. 542, 98 S.Ct. 849, 55 L.Ed.2d 14 (1978), implies that split sentences are proper under the YCA and that our pre-*Durst* ruling to the contrary in *United States v. Marron*, 564 F.2d 867 (9th Cir. 1977), is no longer good law. *United States v. McDonald*, 611 F.2d 1291, 1294 (9th Cir. 1980). The issue, however, arose in *McDonald* in a tangential fashion and had not been raised, argued, or briefed by the parties. We therefore set the instant appeals for en banc consideration to clarify the law of this circuit as to the interrelation between the YCA and the split sentence provision of the general probation statute.[3]

## I. *Is a split sentence permissible under the YCA?*

■ The general probation statute, 18 U.S.C. § 3651, gives district courts power to impose a split sentence on a defendant convicted of a non-capital offense punishable by imprisonment for more than six months but less than life. More precisely, section 3651 allows the court to sentence such a defendant to a term:

> in excess of six months and provide that the defendant be confined in a jail-type institution or a treatment institution for a period not exceeding six months and that the execution of the remainder of the sentence be suspended and the defendant placed on probation for such period and upon such terms and conditions as the court deems best.

The Supreme Court has stated that one section of the YCA, 18 U.S.C. § 5023(a),[4]

three years, respectively, rather than for indeterminate periods, as the YCA requires. The government concedes that those sentences were improper, and we disapprove of them to the extent that they fix an inflexible period of incarceration, instead of merely setting a maximum term to be served in accordance with *United States v. Amidon*, 627 F.2d 1023 (9th Cir. 1980).

4. Section 5023(a) states that:

> Nothing in [the YCA] shall limit or affect the power of any court to suspend the impo-

"incorporates by reference the authority conferred under the general probation statute," *Durst v. United States*, 434 U.S. 542, 549, 98 S.Ct. 849, 853, 55 L.Ed.2d 14 (1978), and was intended "to preserve to sentencing judges their powers under the general probation statute when sentencing youth offenders to probation." *Id.* at 551, 98 S.Ct. at 854. It would seem to follow that section 5023(a) engrafts the split sentence provision of section 3651 onto the YCA, so that a court placing a youth offender on probation under the YCA would have the power to require the offender to serve up to six months of confinement before his probationary period commenced.

There is, however, a strong argument against that conclusion. The split sentence authorization was added to section 3651 eight years after the enactment, in 1950, of the YCA, including section 5023(a).[5] Hence, in 1950 when Congress sought to ensure that the YCA would leave "the power of the court to grant probation ... undisturbed,"[6] federal courts had *no* power to impose a split sentence at all.[7]

The crucial issue, therefore, is whether Congress intended section 5023(a) to incorporate into the YCA the specific provisions of section 3651 as of 1950, or whether it

intended that subsequent changes in the general probation authority of federal courts would apply in the YCA context as well. The answer is by no means self-evident,[8] and reasons can be given in support of either conclusion. We believe, however, that the more persuasive reasons are those indicating an intent that post-1950 amendments to the probation statute should apply to YCA sentencing.

This is not to deny that some factors do suggest the contrary conclusion. For example, the *Durst* Court, as noted above, spoke of section 5023(a) as designed to "preserve" in YCA proceedings the authority of courts under section 3651—a term that suggests specific incorporation of section 3651 as it existed when the YCA was passed. Also, *Durst* relied in part on explicit legislative history manifesting a Congressional intent to allow fines to be imposed as part of YCA sentences. *Durst, supra,* 434 U.S. at 552–53, 98 S.Ct. at 854–55. There is no corresponding legislative history indicating an intent to allow split sentences under the YCA.[9] Indeed, the use of a split sentence involving incarceration for a determinate period of at most six months is arguably inconsistent with the general sentencing scheme of section 5010, under which the sentencing court "may only order an inde-

sition or execution of any sentence and place a youth offender on probation or be construed in any wise to amend, repeal, or affect the provisions of [the probation statutes].

5. Authority to impose a split sentence was added to § 3651 by the Act of August 23, 1958, Pub.L. 85–741, 72 Stat. 834.

6. H.R.Rep.No.2979, 81st Cong., 2d Sess. 3 (1950), *reprinted in* [1950] U.S.Code Cong.Service 3983, 3985.

7. Appellants contend that *Durst* is inapplicable to their cases for a second reason. The precise holding in *Durst* was that a fine or restitution may be imposed as a condition of probation under the YCA. Appellants noted that § 3651 explicitly lists fines and restitution among the "conditions" of probation that the district courts may impose. But incarceration, they argue, is *not* among those "conditions."

We do not agree that *Durst* can be distinguished on this basis. Whether incarceration can be classified as a condition of probation is irrelevant, since § 3651 explicitly authorizes split sentences *in addition to* authorizing impo-

sition of what it labels "conditions" of probation. The reasoning of *Durst* will therefore control here, and permit split sentences under the YCA, unless that reasoning is limited to the provisions of § 3651 as it read when the YCA was enacted.

8. As this circuit has noted with some understatement, "the Youth Corrections Act does not mesh nicely with the Probation Act." *United States v. McDonald*, 611 F.2d 1291, 1295 (9th Cir. 1980).

9. At best, one might note that the House report on the bill that became the YCA stated that "the power of the court to grant probation is left undisturbed by the bill." H.R.Rep.No. 2979, 81st Cong., 2d Sess. 3 (1950), *reprinted in* [1950] U.S.Code Cong.Service 3983, 3985. It could be argued that a conclusion that Congress has limited courts' power to grant probation to youth offenders to whatever it was in 1950 would contradict the notion that Congress intended the YCA to have no effect on the probation power.

terminate sentence for six years or longer," *Watts v. Hadden,* 651 F.2d 1354, 1372 (10th Cir. 1981). *See United States v. Jackson,* 550 F.2d 830, 831 (2nd Cir. 1977).[10] Such a sentence is also seemingly at odds with the literal language of section 5010(a), which makes probation an option "[i]f the court is of the opinion that the youth offender does not need commitment.[11]

Nevertheless, these factors are outweighed by those which suggest that courts sentencing youth offenders are meant to enjoy whatever powers are conferred by section 3651 as amended since 1950. Despite the *Durst* Court's characterization of section 5023(a) as "incorporat[ing] by reference the authority conferred under the general probation statute," *Durst, supra,* 434 U.S. at 549, 98 S.Ct. at 853, section 5023(a) does not appear to be a "statute of specific reference"—i.e., one that literally "adopts" or "incorporates" a pre-existing statute. If section 5023 were a statute of specific reference, the usual canons of statutory interpretation would counsel us to read it as incorporating the probation statute as of 1950, unaffected by the 1958 amendment, unless there is some very clear indication to the contrary. *See Hassett v. Welch,* 303 U.S. 303, 314, 58 S.Ct. 559, 564, 82 L.Ed. 858 (1938); *Pearce v. Director, Office of Workers' Compensation Programs,* 603 F.2d 763, 767 (9th Cir. 1979). But section 5023(a) is not designed to adopt by reference the general probation statute and "mak[e] it as much a part of the later act as though it had been incorporated at full length." *Engel v. Davenport,* 271 U.S. 33, 38, 46 S.Ct. 410, 412, 70 L.Ed. 813 (1926). Rather, it merely provides that the YCA is not to "be construed in any wise to amend, repeal, or affect the provisions of" the probation statute. Providing, in this manner, that the YCA not be read as affecting section 3651 actually emphasizes that these are distinct statutes, and certainly exhibits no intent to make section 3651 an integral part of the YCA. Thus the canon of construction applicable to statutes of specific reference is inapplicable here. Rather, section 5023(a) indicates a congressional intent that whatever powers the probation statute grants courts generally—*including powers added by subsequent amendments*—should be available in the YCA context as well.[12]

---

10. Significantly, however, maximum YCA sentences of less than six years *are* now permissible—indeed, mandatory—under 18 U.S.C. § 3401(g), added by the Federal Magistrate Act of 1979, Pub.L.No. 96–82, § 7(a), 93 Stat. 645, which prohibits magistrates from sentencing youth offenders to more than one year for a misdemeanor or six months for a petty offense. Moreover, this court has held that district courts may not sentence a youth offender under the YCA to a term of confinement longer than the maximum that could be imposed on an adult for the same offense. *United States v. Amidon,* 627 F.2d 1023 (9th Cir. 1980).

11. This appearance of inconsistency may be illusory, because in the split sentence context confinement is imposed pursuant to § 5010(b) or (c), and § 5010(a) does not become operative until the youth offender has been discharged from confinement. *See* note 20 *infra.*

12. This interpretation of § 5023(a) is supported by the similar interpretation given to a parallel statute in *Monarch Life Ins. Co. v. Loyal Protective Life Ins. Co.,* 217 F.Supp. 210 (S.D.N.Y.), *rev'd on other grounds,* 326 F.2d 841 (2nd Cir. 1963), *cert. denied,* 376 U.S. 952, 84 S.Ct. 968, 11 L.Ed.2d 971 (1964). At issue in *Monarch Life* was § 3(b) of the 1945 McCarran Act, 15 U.S.C. § 1013(b), which provided that noth-

ing in that Act—which made federal antitrust laws generally inapplicable to state-regulated insurance businesses—"shall render the ... Sherman Act inapplicable to any agreement to boycott, coerce, or intimidate, or act of boycott, coercion, or intimidation." As of 1945, § 7 of the Sherman Act authorized private treble-damages actions for Sherman Act violations, but Congress repealed § 7 in 1955. The district court held that § 3(b) was *not* an "adoption" of the Sherman Act (and hence that after 1955, § 3(b) conferred no authority for a treble-damages action for Sherman Act violations in the insurance field). The district court reasoned that § 3(b) "merely provided that the Sherman Act should continue *applicable* to acts of boycott, coercion and intimidation in the insurance industry." 217 F.Supp. at 215. This, said the court, was quite different from an adoption, where the adopting statute "evidence[s] a legislative intent to make the adopted statute an integral part of the adopting statute." *Id.* at 214. That reasoning is equally applicable here, and suggests that under § 5023(a), courts sentencing youth offenders enjoy whatever powers the general probation statute, *as currently amended,* confers.

[The Second Circuit reversed *Monarch Life* because it held the treble-damages provisions

■ Most importantly, we believe that reading the YCA as allowing courts to impose split sentences on youth offenders is the more appropriate interpretation in view of the policies that the YCA is designed to advance. It is proper, and indeed essential, to interpret the words of a statute in the light of the purposes Congress was seeking to serve. *Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600, 608, 99 S.Ct. 1905, 1911, 60 L.Ed.2d 508 (1979). Here, permitting split sentences is consistent with the Supreme Court's emphasis that "the YCA strongly endorses the discretionary power of a judge to choose among available sentencing options," *Ralston v. Robinson,* 454 U.S. 201, 102 S.Ct. 233, 237, 70 L.Ed.2d 345 (1981), and "was meant to enlarge, not restrict, the sentencing options of the federal trial courts." *Dorszynski v. United States,* 418 U.S. 424, 436, 94 S.Ct. 3042, 3049, 41 L.Ed.2d 855 (1974). This policy of flexibility and the grave responsibility that district courts bear in deciding what course of treatment will be most likely to bring about the elusive goal of rehabilitating youthful offenders argue strongly for resolving any doubts in favor of maximizing the sentencing options available to district judges.

■ Our result supports the rehabilitative goals of the YCA. A court convinced that a particular youth offender merited a split sentence and YCA treatment, rather than straight YCA probation or an adult split sentence, will be able to impose such a sentence under the YCA, and thereby still permit the youth to have his conviction set aside under section 5021(b) upon discharge from the split sentence probation.[13] Moreover, if a court finds that straight YCA

probation would be too lenient, it will have an alternative other than the more severe sanctions available under section 5010(b) or 5010(c). *Cf. United States v. Oliver,* 546 F.2d 1096, 1099 (4th Cir. 1976) *cert. denied,* 435 U.S. 914, 98 S.Ct. 1466, 55 L.Ed.2d 504 (1978) (to hold that fines could not be imposed as a condition of probation under the YCA might "diminish the liberal use of the probation alternative").

Having considered the factors set out above, we conclude that split sentences, as authorized by 18 U.S.C. § 3651, are permissible under the YCA.

(II) *Must youth offenders who receive split sentences under the YCA be segregated from adults during confinement?*

■ We have concluded that Congress's 1958 authorization of split sentences is applicable to youth offenders placed on probation under the YCA. Nevertheless, Congress did not contemplate the possibility of a split sentence for youth offenders when it enacted the YCA in 1950. Consequently, it did not address the question whether youth offenders incarcerated pursuant to such a sentence must be segregated from adult prisoners and confined in separate institutions. Nor has Congress addressed that question explicitly since enacting the split-sentence authorization.

Thus the YCA, as it stands, contemplates only two categories of incarcerated youth offenders: those committed for treatment under section 5010(b) or (c), and those sentenced as adults under section 5010(d). Congress clearly intended that youth offenders in the former category be separated from adult prisoners and confined in sepa-

---

of the Clayton Act applicable. It did *not* disturb the district court's conclusion that § 3(b) was not an adoption of the Sherman Act.]

**13.** Losing the possibility of setting aside the conviction can seriously thwart the goal of rehabilitation central to the YCA.

The provision for setting aside an offender's conviction ... has a curative effect which facilitates the accomplishment of the correction of antisocial tendencies of young offenders, and thus furthers the central goal of

rehabilitation. If a young offender starts his adult life with a criminal record, it is likely that he will consider his chances for a respectable and rewarding future to be minimal. The stigma of a felony conviction is permanent and pervasive. Such a burden might lead a young person to reason that he is already a "marked man", and thus [make] it more likely that he will be a recidivist. *United States v. Glasgow,* 389 F.Supp. 217, 224–25 (D.D.C.1975) (footnotes omitted).

rate institutions,[14] and made such separation mandatory (absent special circumstances) in section 5011.[15] Youth offenders sentenced to imprisonment as adults, on the other hand, need not be segregated from adults.[16] We must decide, in light of the overall scheme and rehabilitative purpose of the YCA, into which of these two categories youth offenders incarcerated for up to six months under section 5010(a) are most appropriately placed.[17]

The youth offenders who Congress believed did not require segregation from adults are those sentenced as adults under section 5010(d)—those whom the sentencing court has specifically found "will not derive benefit from treatment." No such finding precedes the imposition of probation (with or without a split sentence) under section 5010(a). Indeed, probation itself is a form of "treatment" under the YCA, which in section 5006(f) defines "treatment" quite broadly as "corrective and preventive guidance and training designed to protect the public by correcting the antisocial tendencies of youth offenders." Probation clearly satisfies this definition, for it is aimed at "correcting the antisocial tendencies" of the probationer through an individualized program supervised by a probation officer who seeks to guide the probationer into improving his conduct and becoming a law-abiding citizen. *United States v. Glasgow*, 389 F.Supp. 217, 220–22 (D.D.C.1975).

Since youth offenders who are given split sentences are thus receiving treatment under the YCA, they merit the separation from hardened adult criminals that Congress believed "essential to the operation of a successful rehabilitative treatment program." *Durst v. United States*, 434 U.S. 542, 545, 98 S.Ct. 849, 851, 55 L.Ed.2d 14 (1978). "[T]he legislative history [of the YCA] makes it clear that Congress viewed separation of youth offenders from older, more sophisticated inmates as the crucial initial step in preventing transformation of the youths into hardened criminals." *Watts v. Hadden*, 651 F.2d 1354, 1365 (10th Cir. 1981). Congress thus believed exposure to adult criminals posed an unacceptable risk of corrupting those youth offenders who require potentially lengthy commitment under section 5010(b) or (c) in order to be treated. It would be illogical indeed to suppose, then, that Congress would have countenanced such exposure for youth offenders who merit the less onerous split sentence.[18]

---

14. "The need to segregate youth from adult criminals drew special attention in the legislative history" of the YCA. *Ralston v. Robinson*, —— U.S. ——, 102 S.Ct. 233, 240, 70 L.Ed.2d 345 (1981). The House Report on the bill that became the YCA warned, for example, that:

> By herding youth with maturity, the novice with the sophisticate, the impressionable with the hardened, and by subjecting youth offenders to the evil influences of older criminals and their teaching of criminal techniques, without the inhibitions that come from normal contacts and counteracting prophylaxis, many of our penal institutions actively spread the infection of crime and foster, rather than check, it.

H.R.Rep.No. 2979, 81st Cong., 2d Sess. 2–3 (1950), *reprinted in* [1950] U.S.Code Cong.Service 3983, 3985.

15. Section 5011 provides in relevant part that:

> Committed youth offenders not conditionally released shall undergo treatment in institutions ... and other agencies.... Insofar as practical, such institutions and agencies shall be used only for treatment of committed youth offenders, and such youth offenders shall be segregated from other offenders, and classes of committed youth offenders shall be segregated according to their needs for treatment.

16. Section 5011 does not apply to such offenders; it is limited by its terms to "committed youth offenders," which, according to § 5006(e), means only offenders sentenced under § 5010(b) or (c).

17. In deciding which result is most appropriate, our task is not to give the answer we think best but to project how Congress would have answered this question had it explicitly addressed the incarceration of youth offenders. *Williams v. W.M.A. Transit Co.*, 472 F.2d 1258, 1265 (D.C.Cir. 1972).

18. We also note that § 5021(b) allows youths given probation under § 5010(a) to have their convictions set aside upon discharge from probation—an opportunity similar to that afforded by § 5021(a) to those sentenced under § 5010(b) or (c), but one *not* extended to youths sentenced under § 5010(d). Setting aside the youth offender's conviction serves rehabilitative ends. *See* note 13 *supra*. Hence

We conclude that youth offenders who receive split sentences under the YCA must be kept segregated from adult inmates during their confinement, and must be incarcerated, insofar as practical, in separate facilities.[19]

The judgments of the district courts are REVERSED insofar as they purported to impose determinate minimum sentences under the Youth Corrections Act and insofar as they failed to specify segregative confinement, and are in all other respects AFFIRMED. The cases are REMANDED for resentencing in accordance with this opinion.[20]

FERGUSON, Circuit Judge, with whom BOOCHEVER, Circuit Judge, joins, dissenting:

Congress has told federal judges that youths who are entitled to probation under the Youth Corrections Act may not be put in jail as a condition precedent to receiving probation. I therefore dissent.

The majority holds that "split sentences, as authorized by 18 U.S.C. § 3651, are permissible under the YCA." This conclusion follows from the premise that "courts sentencing youth offenders are meant to enjoy whatever powers are conferred by section 3651 as amended since 1950."

It must be assumed that the majority's abstraction, "courts are meant to enjoy," is a reference to a legislative act of Congress—that Congress granted the undefined and potentially limitless sentencing power referred to, when it enacted the YCA in 1950. Thus stated, the proposition is wrong.

The majority holds that Congress wrote a blank check in 1950 that would allow expansion of sentencing options under the YCA independently of the policies, or indeed the express limitations, of the YCA, by future amendments to a different statute. That different statute is the general probation statute, which did not provide for split sentences until 1958. Indeed, the majority concludes that, in 1950, Congress intended that the YCA would henceforth include "whatever powers are conferred by section 3651 as amended since 1950." However, the majority abandons this premise when it states, correctly, that youth offenders who

---

this feature of the YCA strengthens our belief that youth offenders given probation, like those sentenced to commitment under § 5010(b) or (c), are meant to be dealt with in a manner that emphasizes the goal of rehabilitation, and should thus be segregated from adult offenders.

**19.** We therefore agree with the view of the Third Circuit. *United States ex rel. Dancy v. Arnold*, 572 F.2d 107 (3rd Cir. 1978).

**20.** To assist a sentencing judge who may wish to impose a split sentence under the YCA, we suggest that the following form of sentence would be appropriate:

The court finds that the defendant was ____ years of age (18–21) at the date of conviction [or finds that the defendant was ____ years of age (22–25) at the date of conviction and that there are reasonable grounds to believe that the defendant will benefit from treatment under the Federal Youth Corrections Act as a young adult offender pursuant to 18 U.S.C. § 4216].

IT IS ADJUDGED that the defendant is hereby committed to the custody of the Attorney General of the United States, or his authorized representative, for treatment and supervision pursuant to the Federal Youth Corrections Act, 18 U.S.C. § 5010(b) [or 5010(c)] until discharged as provided in 18

U.S.C. § 5017(c) [or 5017(d)], but in no event to exceed the statutory maximum that an adult could receive.*

IT IS FURTHER ADJUDGED that on condition that the defendant be confined for a period of ____ months (six months or less), the execution of the remainder of the term of said commitment is hereby suspended and, upon release from commitment, the defendant, who at the time of such release will need no further commitment, is placed on probation, pursuant to 18 U.S.C. §§ 5010(a), 5023(a), and 3651, for a period of ____ years on the following terms and conditions:

1. That he/she comply with all local, state and federal law;

2. That he/she comply with the rules and regulations of the probation department;

3. (Any additional special provision.)

IT IS FURTHER ADJUDGED that during the period of his/her commitment, defendant, as required by 18 U.S.C. § 5011, shall be kept segregated from adult offenders and be confined, insofar as practical, in a separate facility.

* The addition of this clause satisfies the requirements of *United States v. Amidon*, 627 F.2d 1023 (9th Cir. 1980).

are given split sentences must be segregated from other classes of prisoners (section 3651 contains no such limitation). If the premise is not sound enough to support non-segregated confinement, it is not sound enough to support split sentencing.

If the majority were correct that Congress wrote a blank check in 1950, then the YCA's sentencing provision would automatically incorporate additions to the general probation statute, even when those additions could not be envisioned in 1950 because they did not exist, and even when those additions controverted the spirit and purpose of the YCA. Thus, the majority holds, while simultaneously admitting that the YCA and Probation Act do not "mesh nicely," that if Congress in the future includes options under the general adult probation statute, such options must become part of the judge's sentencing powers under the YCA.

The unfortunate consequence is not a chimeric parade of horribles, for the jail sentences are very real to the defendants in these consolidated cases. One district court ordered that Arthur, age 19 at the time of sentencing, be jailed for thirty days for stealing two bicycles.[1] Another district court ordered that Smith, age 20 at the time of sentencing, be jailed thirty days. Commitment ordered in conjunction with probation under the YCA runs counter to the rehabilitative purpose of the Act. Congress has mandated that youths granted probation cannot be committed. 18 U.S.C. § 5010(a) (1976).

1. It is not certain that Arthur, age 19 at the time of sentencing, should have even been tried and sentenced under the YCA. He should have been sentenced under the provisions of the Federal Juvenile Delinquency Act if he had not attained his eighteenth birthday when he committed the crime. 18 U.S.C. § 5031 et seq. (1976). The record before this court does not disclose whether Arthur was seventeen or eighteen years old when he committed his crime on June 30, 1979.

2. The majority does not believe that in Durst the Court literally meant that 5023(a) "adopts" or "incorporates" a pre-existing statute. However, the use of the word "incorporates" does not appear to be an inadvertent mischaracteri-

## I.

Two leading cases on the YCA do not support the position taken by the majority. Indeed, the majority mischaracterizes the holding of *Durst v. United States*, 434 U.S. 542, 98 S.Ct. 849, 55 L.Ed.2d 14 (1977), and its efforts to distinguish *Dorszynski v. United States*, 418 U.S. 424, 94 S.Ct. 3042, 41 L.Ed.2d 855 (1974), from the case before us are inadequate.

## A.

The majority selectively quotes the language in *Durst* which states that 18 U.S.C. § 5023(a) (1976) "incorporates by reference the authority conferred under the general probation statute [18 U.S.C. § 3651]." Taken in isolation, these words do indeed suggest that section 5023(a) "engrafts the split sentence provision of section 3651 onto the YCA." That misleading impression, however, is dispelled when the words are read in context: "The language of § 5010(a) neither grants nor withholds the authority to impose fines or orders of restitution. Another provision of the YCA, however, § 5023(a), incorporates by reference the authority conferred under the general probation statute *to permit such exactions.*" *Durst, supra*, 434 U.S. at 549, 98 S.Ct. at 853 (emphasis added). The authority referred to in *Durst* was not any and all authority conferred in the future by the general probation statute; instead, it was an authority limited to imposing fines or orders of restitution.[2]

zation by the Supreme Court. More recently the Court has stated, "By virtue of § 5023(a), the YCA incorporates 18 U.S.C. § 3653." *Ralston v. Robinson*, 454 U.S. 201, 102 S.Ct. 233, 242 n.8, 70 L.Ed.2d 345 (1981). Section 3653, "Report of probation officer and arrest of probationer," was enacted in 1948, two years before the passage of the YCA, and remains unchanged to this day. The effect of the YCA's preserving to sentencing judges the probationary powers that they had in 1950 in § 3651 and § 3653 is exactly the same as if the YCA "incorporated" in 1950 the probationary powers existing in 1950.

The majority, *see* Majority Opinion, *ante*, at note 13, relies on a Southern District of New York case, *Monarch Life Ins. Co. v. Loyal Pro-*

That narrowly limited authority to impose fines or orders of restitution existed under the general probation statute that was enacted in 1948, Act of June 25, 1948, ch. 645, 62 Stat. 842 (amended 1958, 1970, 1972, 1978, current version 18 U.S.C. § 3651 (1976 & Supp. III 1979). Furthermore, that general probation statute, which provided for fines and restitution, was based on an earlier statute, Act of Mar. 4, 1925, ch. 521, § 1, 43 Stat. 1259. The earlier statute dating from 1925 also provided for fines and restitution. Congress did not enact the YCA until 1950, at which time it specified that nothing in the Act was to be construed in any wise to amend, repeal, or affect the provisions of the probation statutes. Act of Sept. 30, 1950, ch. 1115, § 2, 64 Stat. 1089 (amended 1952, current version 18 U.S.C. § 5023(a) (1976)).

It is against that background that we must read the holding of *Durst*: "Congress' purpose in adopting § 5023(a), was to assure that a sentence under § 5010(a) would not displace the authority conferred by § 3651 to impose fines and orders of restitution as conditions of probation." *Id.*, 434 U.S. at 553, 98 S.Ct. at 855. *Durst* holds that the YCA, enacted in 1950, did not displace an authority conferred by the probation statutes in 1948, and existing since 1925, to impose fines and orders of restitution along with probation.

*Durst* concerned itself only with the authority to impose fines and restitution. The petitioners in *Durst* recognized that § 5023(a) made § 3651 applicable to a

§ 5010(a) sentence and conceded that restitution is a permissible condition of a probationary sentence under § 5010(a), because § 3651 directly authorizes restitution without resort to any other penalty provision. However, the *Durst* petitioners argued that a fine was not permissible in conjunction with a § 5010(a) sentence because a fine requires resort to the offense penalty provision under which the youth is convicted. Thus, petitioners understood probation to be an alternative to the imposition of a fine under § 5010(a). However, petitioners' argument was refuted by the legislative history of the Act, which clearly revealed that Congress intended *to preserve* to sentencing judges their powers under the general probation statute. *Durst, supra*, 434 U.S. at 542, 98 S.Ct. at 849.

The Supreme Court in *Durst* also rejected the argument that fines are punitive and their imposition therefore inconsistent with the rehabilitative goals of the YCA. First, the Court rejected this argument because "Congress expressed its judgment to the contrary in preserving the authority of sentencing judges to impose them [fines] as a condition of probation." However, the eighty-first Congress (1950) did not and could not express its judgment to preserve the authority of the sentencing judge to impose a split sentence, because such authority did not exist under the general probation statute in 1950.

Second, in *Durst*, the Court was not persuaded that fines should necessarily be regarded as other than rehabilitative when

---

*tective Life Ins. Co.*, 217 F.Supp. 210 (S.D.N.Y. 1963), to support its proposition that "whatever powers the probation statute grants—*including powers added by subsequent amendments*—should be available in the YCA context as well." The majority relies on the *Monarch* holding that the plaintiffs could not recover treble damages under the Sherman Anti-Trust Act. *Monarch* was reversed by the Second Circuit on a related issue—the availability of treble-damages under the Clayton Act. Moreover, the statutory scheme in *Monarch* is not parallel to the one here. The majority argues that the YCA grants sentencing authority, and that that grant of authority is enlarged by inclusion of the powers of the general probation statute. The statute at issue in *Monarch* was

not a grant of enforcement power at all, but an exemption from such power. Canons governing the interpretation of statutory exemptions from judicial power should not blithely be employed to interpret statutory grants of judicial power.

Both the YCA and the general probation statute provide the court with sentencing options. In 1950, Congress believed that options in the general probation statute were consistent with the sentencing scheme of the YCA. It is too much to assume that Congress expected that whatever options would be added to the general probation statute would mesh with the YCA sentencing provisions and remain consistent with the goals of the YCA.

imposed as a condition of probation. The Court found "much force in the observation of the District Court" that:

"[A] fine could be consistent ... with the rehabilitative intent of the Act. By employing this alternative [a fine and probation], the sentencing judge could assure that the youthful offender would not receive *the harsh treatment of incarceration*, while assuring that the offender accepts responsibility for his transgression."

*Durst, supra*, 434 U.S. at 553–54, 98 S.Ct. at 855 (emphasis added). In the instant case, the majority acts precisely to assure that youthful offenders will receive the harsh treatment of incarceration even when a sentencing judge decides that a youth is entitled to probation. The majority's decision to permit the jailing of youthful offenders as a condition of probation is not consistent with the rehabilitative goal of the YCA.

### B.

In addition to adopting a strained reading of *Durst*, the majority cannot adequately distinguish *Dorszynski v. United States*, 418 U.S. 424, 94 S.Ct. 3042, 41 L.Ed.2d 855 (1974), from the instant case.

In *Dorszynski*, 418 U.S. 424, 94 S.Ct. 3042, 41 L.Ed.2d 855 (1974), petitioner's counsel requested that the district court place petitioner on probation under the YCA. "Petitioner then received a split sentence which remitted him to the custody of the Attorney General for one year, to serve 90 days' confinement in a jail-type or treatment institution ...; the execution of the remainder of the sentence was suspended and petitioner was placed on probation for two years upon release from custody." *Id.* at 429, 94 S.Ct. at 3046. Petitioner sought post-conviction relief from the district court on the ground that, *inter alia*, the court was without jurisdiction to impose the sentence given because the court failed to make a

finding that petitioner would not derive benefit from treatment under § 5010(b) or (c), as assertedly required by § 5010(d). *Id.* at 430, 94 S.Ct. at 3046.

The District Court stated at the post-conviction hearing that the Act did not require an affirmative finding that petitioner would not benefit from treatment thereunder before the court could sentence him under other applicable penalty provisions; the court concluded that in committing petitioner for one year under a split sentence, "the [District] Court impliedly [held] the Youth Corrections Act not applicable."

*Id.* at 430–31, 94 S.Ct. at 3046–47 (citation omitted). The Supreme Court rejected the position of the district court. The Court held that § 5010(d) of the YCA requires the district court, in sentencing a youth offender under other applicable penal statutes, to make a finding that the offender would not benefit from treatment under § 5010(b) or § 5010(c) of § 5010. *Id.* at 425, 94 S.Ct. at 3044.

*Dorszynski* requires that if, pursuant to § 5010(d), a judge sentences a youth offender to jail, then the judge must find that the youth would not benefit from treatment under the Act. The need for a finding of "no benefit" is manifest, because the YCA exists to promote the rehabilitation of the young. Before a court may impose a split sentence on a youth offender, it must first find that the offender will not benefit from treatment under the YCA.

The sentences of Smith and Arthur are not distinguishable in any significant respect from the sentence of Dorszynski. Like Dorszynski, Smith and Arthur received determinate split sentences.[3] Furthermore, the five-year sentence of Smith and the three-year sentence of Arthur, like the one-year sentence of Dorszynski, were made with respect to penalty provisions outside the YCA.[4] Thus, Smith and Arthur, like Dorszynski, received punitive sentences out-

---

**3.** The Government concedes that it was error to impose determinate sentences under the YCA. *See* Majority Opinion, *ante*, at note 3. This concession is further evidence that the sentencing judges fabricated an option outside

the YCA without a finding that defendants would not benefit from the Act.

**4.** In *Dorszynski*, petitioner and his codefendant were charged with a misdemeanor offense under 18 U.S.C. § 2 and 21 U.S.C. § 844(a). "The

side the YCA, without any finding that they would not benefit from the rehabilitative provisions of the YCA.

The majority attempts to distinguish the *Dorszynski*-type situation, where a youth receives a split sentence as an adult pursuant to § 5010(d), from a situation where a youth receives a split sentence pursuant to § 3651, but is sentenced as a youth offender. In the first situation, the youth will have a criminal conviction on his record; in the second situation, the youth will have a chance to have his or her conviction set aside under § 5021(b) upon discharge from probation. The majority correctly observes that "[l]osing the possibility of setting aside the conviction can seriously thwart the goal of rehabilitation central to the YCA." Maj. op. at n.15. Surely, however, no one can seriously believe that a jail sentence is, *presto chango*, transformed into a rehabilitative experience consistent with the purpose of YCA probation merely because the conviction may one day be set aside.[5]

## II.

From the legislative history of the YCA, the majority takes examples showing that

Government informed the court that the maximum sentence petitioner and his codefendant, who were first offenders under § 844(a), could receive was one year in prison...." 418 U.S. at 427, 94 S.Ct. at 3045. Dorszynski's split sentence remanded him to the custody of the Attorney General for one year.

The split sentences of Smith and Arthur were also imposed, without the necessary "no benefit" finding, under other applicable penalty provisions. Arthur was charged under 18 U.S.C. § 661, which provides for up to five years of imprisonment. Arthur's split sentence committed him to the custody of the Attorney General for imprisonment for a period of three years, to serve 30 days' confinement. Smith was charged under 18 U.S.C. § 656, which carries a maximum sentence of five years' imprisonment. Her split sentence committed her for a period of five years, to serve 45 days' confinement, the execution of the remainder of the sentence being suspended. The sentencing judge labelled this as a § 5010(a) sentence, but in substance it was really a § 5010(d) sentence, without the no-benefit finding.

5. Nor is *United States v. Oliver*, 546 F.2d 1096 (4th Cir. 1976), to the contrary. *Oliver* holds that a fine may be imposed as a condition of probation, but recognizes that the harsher sanction of imprisonment is inconsistent with

§ 5023(a), which specifies the relationship between the YCA and the general probation statute, was intended to "preserve" in the YCA proceedings the authority that sentencing judges had in 1950 under the general probation statute. The majority has not exhausted the evidence. Other examples also demonstrate the point that the YCA was intended to preserve the options existing in the general probation statute.

The Supreme Court observed in *Durst*:
Judge Phillips, Chairman of the Subcommittee responsible for drafting model youth correction legislation to be sponsored by the Judicial Conference, emphasized that "[i]t leaves [the probation system] absolutely undisturbed," for the intent of the Judicial Conference in sponsoring the bill was to retain existing options with respect to probation and adult punishment, while simply adding a new option of commitment for treatment. *See* 1943 House Hearings 34–37.

*Durst, supra*, 434 U.S. at 551–52, 98 S.Ct. at 854.[6]

In 1952, the eighty-second Congress amended the Act of Sept. 30, 1950, today

the purposes of the Youth Corrections Act: "We begin with the observation, as did the court in *Cramer v. Wise*, 501 F.2d 959 (5th Cir.) ... that the Youth Corrections Act, by its terms, does not prohibit the imposition of monetary fines, but only precludes the imposition of a prison sentence." *Id.* at 1098.

6. During the House hearings on H.R. 210, 78th Cong., 1st Sess. (1943), "a bill whose youth corrections provisions were nearly identical to those of S. 4609 introduced in 1949," *Durst, supra*, 434 U.S. at 551, 98 S.Ct. at 854, Judge Phillips said the following about the bill's effect on the probation system:

Mr. Cravens. Does this bill in any way affect the so-called probation system?
Judge Phillips. Not at all.
Mr. Cravens. There is no attempt to disturb that?
Judge Phillips. No sir; we found it was working well and concluded it ought not to be disturbed.
Mr. Cravens. And this bill was drafted with that in mind?
Judge Phillips. Yes, sir. It leaves it absolutely undisturbed.

*Id.* at n.13. Thus, the YCA was intended to leave undisturbed a real, existing probation

codified as 18 U.S.C. § 5023(a) (1976), to provide that the YCA would not affect District of Columbia Code provisions relative to probation. "[B]oth the laws of the United States and the laws of the United States applicable exclusively to the District of Columbia," explained the House Report, "are expressly retained." H.R.No.1629, 82nd Cong., 2d Sess. (1952), *reprinted in* [1952] U.S.Code Cong. Service 1379, 1381. This committee report, which represents the will of Congress, and the amendment of § 5023(a), may be weighed in construing the meaning of the earlier enactment. *See Southeastern Community College v. Davis*, 442 U.S. 397, 412 n.11, 99 S.Ct. 2361, 2370 n.11, 60 L.Ed.2d 980. Between the passage of the YCA in 1950 and the 1952 amendment, Congress made no changes whatsoever in the general probation statute, 18 U.S.C. § 3651, or the sentencing powers under the YCA, 18 U.S.C. § 5010. Thus, the probation laws that Congress understood as being expressly retained in 1952 were exactly the same laws that existed in 1950 and that were not disturbed by the creation of the YCA.

The majority says that the YCA was not a statute of specific reference such that the YCA would have incorporated the Probation Act as it existed in 1950 and without later amendments. Because § 5023 says only that the Probation Act powers were not amended, limited, or disturbed by the YCA, the majority is probably correct that § 5023 does not incorporate the Probation Act into the YCA. This leaves the question, however, whether the intent of § 5023 was to allow YCA judges the powers under all later amendments to the Probation Act, or only to make clear that the YCA did not disturb the probation power as it existed at passage of the YCA. There is nothing in the language of § 5023 to suggest that Congress contemplated that the intricate structure of the YCA would necessarily be qualified by all later amendments to the Probation Act whether or not those amendments were consistent with the purposes of the YCA. As the majority recognizes by

system. There is no hint whatsoever that it was intended to include whatever options Con-

quoting *United States v. McDonald*, 611 F.2d 1291, 1295 (9th Cir. 1980), "the Youth Corrections Act does not mesh nicely with the Probation Act." Unfortunately, the majority failed to heed the admonition of *McDonald*: "Frequently an interpretive gloss can eliminate or reduce these imperfections but that is not possible here." *Id.*

The history of the YCA indicates that Congress intended to leave undisturbed the power to grant straight probation which existed in 1950, not to limit the YCA by unknown future amendments in the probation statutes. In House Report No. 2979, the Committee on the Judiciary reported in part:

Under [the YCA] provisions, if the court finds that a youth offender does not need treatment, it may suspend the imposition or execution of sentence and place the youth offender on probation. Thus, the power of the court to grant probation is left undisturbed by the bill.

If the court finds that a convicted person is a youth offender and the offense is punishable by imprisonment, it may, in lieu of the penalty of imprisonment otherwise provided by law, sentence the youth offender for treatment and supervision until discharged by the Division as provided in section 5017(c) of the bill.

H.R.Rep.No.2979, 81st Cong. 2nd Sess., *reprinted in* [1950] U.S.Code Cong. & Ad. News 3983, 3985. The Committee Report indicates that § 5023 was designed to leave the option of full probation available to a sentencing judge who feels that no treatment is needed, not to allow split sentences as a form of treatment under probation. The report describes the purpose of the YCA to reduce recidivism "by permitting the substitution of correctional rehabilitation for retributive punishment." *Id.* at 3983. Its description of "treatment" makes it clear that the drafters did not think of confinement *per se* as rehabilitative, but rather sought to avoid the anticipated "hardening" effect of ordinary imprison-

gress devised in the future under the general probation statute.

ment by allowing the judge to substitute commitment with treatment if the offender could benefit from it. *Id.* at 3983, 3993. Although the Supreme Court has said that the purpose of the YCA was to enlarge, not restrict, a sentencing judge's options, *Dorszynski, supra,* 418 U.S. at 424, 94 S.Ct. at 3042, it did so by two very specific sentencing options: (1) custody and treatment under § 5010(b) and (c); and (2) probation under § 5010(a). *Id.* at 433, 94 S.Ct. at 3048. *See also Ralston v. Robinson,* 454 U.S. 201, 102 S.Ct. 233, 237, 70 L.Ed.2d 345 (1981). The meaning of "probation" at the passage of the YCA did not include jail time, and there is no indication in the legislative history that probation under § 5010(a) was to mean whatever the concept of probation in the general statute governing adult probation might develop into in the future.

A statute is to be construed according to its purposes. *Chapman v. Houston Welfare Rights Organization,* 441 U.S. 600, 608, 99 S.Ct. 1905, 1911, 60 L.Ed.2d 508 (1979). Because the purpose of the YCA was to create new sentencing options that would remove youth offenders from ordinary imprisonment unless the sentencing judge finds that they would not benefit from treatment, it would be inappropriate to read the later addition to the Probation Act allowing imprisonment to accompany probation into § 5010(a) by virtue of § 5023's statement that the Probation Act powers which existed in 1950 were "undisturbed" by the YCA.

In enacting the YCA, the eighty-first Congress (1950) intended to preserve the probation power, as it existed in 1950, leaving unaffected the existing provisions of § 3651 for the use of judges who sentenced under the YCA. "There is no corresponding legislative history indicating an intent to allow split sentences under the YCA," the majority candidly admits. Actually, this admission is somewhat disingenuous. Of course there could be no such legislative intent to allow split sentences in 1950, since split sentences were not included under the general probation statute until 1958.

The majority believes that there are "more persuasive reasons" indicating an intent that post-1950 amendments to the probation statute should apply to YCA sentencing. Those "persuasive reasons" turn out to be policy considerations.

### III.

The majority believes that permitting split sentencing under the YCA will advance the Act's policy of flexibility. However, the YCA does not give the judge unfettered discretion; it only endorses "the discretionary power of a judge to choose *among available options,*" *Ralston, supra,* 102 S.Ct. at 237 (emphasis added). If the sentencing judge could devise any punishment he thought appropriate, then there would be little need for the carefully drafted sentencing provisions in the YCA.

*Ralston, supra,* derived the principle that the YCA endorses the discretionary power of the sentencing judge from the exhaustive analysis in *Dorszynski, supra,* of the history, structure, and underlying policies of the YCA. In *Dorszynski,* the Court did not endorse discretionary power to impose a split sentence under the YCA; rather, the Court decided that it was within the discretionary power of the sentencing judge to sentence a youth to a split sentence *outside* the YCA upon a showing that the youth would *not benefit* from the YCA.

It must be remembered that sentencing options created by the YCA in 1950 represented a substantial innovation at the time. "The objective of these options represented a departure from traditional sentencing, and focused primarily on correction and rehabilitation." *Dorszynski, supra,* 418 U.S. at 433, 94 S.Ct. at 3048. Treatment, supervision, and probation were intended to serve as viable substitutes for adult jail sentences. It is, of course, no secret that there has been some shifting in penological philosophy, away from a medical model that prevailed at the time the YCA was passed, and toward a theory that deterrence and retribution are the most important purposes of confinement. *See Watts v. Hadden,* 651 F.2d 1354, 1360 (10th Cir. 1981). Congress's

views, however, were informed by the medical and rehabilitative model, which gave meaning and purpose to the legislation that Congress enacted.

The history of the YCA illuminates Congress's innovative efforts to depart from traditional retributive approaches to punishment:

> The Federal Youth Corrections Act has been accurately described as the most comprehensive federal statute concerned with sentencing.... The Act is in substantial part an outgrowth of recommendations made by the Judicial Conference of the United States more than 30 years ago. The principles and procedures contained in the Conference recommendations were in turn largely based on those developed since 1894 for a system of treatment of young offenders in England, known as the Borstal system.... Statistics available at the time of the Conference study revealed the two principal motivating factors behind the enactment of the Act: first, the period of life between 16 and 22 years of age was found to be the time when special factors operated to produce habitual criminals. Second, then-existing methods of treating criminally inclined youths were found inadequate in avoiding recidivism.... The Act was thus designed to provide a better method for treating young offenders convicted in federal courts in that vulnerable age bracket, to rehabilitate them and restore normal behavior patterns....
>
> To accomplish this objective, federal district judges were given two new alternatives to add to the array of sentencing options previously available to them, ...; first, they were enabled to commit an eligible offender to the custody of the Attorney General for treatment under the Act. 18 U.S.C. §§ 5010(b) and (c). Second, if they believed an offender did

not need commitment, they were authorized to place him on probation under the Act. 18 U.S.C. § 5010(a). If the sentencing court chose the first alternative, the offender would be committed to the program of treatment created by the Act.

*Dorszynski, supra*, 418 U.S. at 432–33, 94 S.Ct. at 3047–48. Finally, § 5010(d) of the YCA preserved the power of trial judges to sentence youth offenders under "any other applicable penalty provision."

Thus, the YCA creates three sentencing options: (1) probation, (2) treatment and supervision, (3) sentencing under "any other applicable penalty provision." In addition, it leaves undisturbed the sentencing options available under the general probation statute in 1950, at the time of the passage of the YCA. Although the sentencing judge has discretion to choose among these options, he cannot choose outside them or mix them up.

In the present case, the sentencing judges chose outside their available options. First, the federal district judges below could not sentence under the probation option in § 5010(a), which provides:

> If the court is of the opinion that the youth offender does not need commitment, it may suspend the imposition or execution of sentence and place the youth offender on probation.

Both the language and the legislative history of this option indicate that commitment and probation, like oil and water, do not mix under the YCA. 18 U.S.C. § 5010(a); H.R.Rep.No. 2979, 81st Cong. 2nd Sess. *reprinted in* [1950] U.S.Code Cong. & Ad. News, 3983–3993.

Second, in lieu of the penalty of imprisonment otherwise provided by law, the court did not sentence the youth offender to treatment and supervision.[7] In neither

---

**7.** Sections 5010(b) and (c), the treatment and supervision sections, provide for indeterminate sentences; the Government concedes the error of the courts below in giving determinate sentences. *See* note 3, *ante.*

The majority believes that "in the split sentence context confinement is imposed pursuant to § 5010(b) or (c), and § 5010(a) does not

become operative until the youth offender has been discharged from confinement." *See* Majority Opinion at note 11, *ante.*

In 1950, however, Congress did not intend that probation, pursuant to § 5010(a), would become operative following a § 5010(b) or a § 5010(c) sentence. Instead, as the terms of §§ 5010(b) and (c) provide, a person sentenced

Smith's nor Arthur's "Judgment and Probation/Commitment Order" is there so much as one word about § 5010(b), 5010(c), or supervision and treatment in jail.

Third, the courts did not properly sentence the youth offenders "under any other applicable penal provisions." The courts imposed split terms on the youth offenders under other applicable penal provisions, 18 U.S.C. § 661 (1976) and 18 U.S.C. § 651 (1976), and these sentences are not distinguishable in any significant way from the § 5010(d) sentences handed out in *Dorszynski*.[8] Such a split sentence requires a finding that the youth offender will not benefit by the YCA. "This finding requirement was adapted from the similar Borstal provision which disallows a sentencing court to 'impose imprisonment on a person under twenty-one years of age unless ... no other [Borstal] method of dealing with him is appropriate....'" *Dorszynski, supra,* 418 U.S. at 447, 94 S.Ct. at 3054 (Marshall, J., concurring) (footnotes omitted). Here the youths were sentenced to imprisonment without such a finding.

Finally, the district court did not exercise options available under the general probation statute in 1950, since a split sentencing option was not then a part of § 3651. At this late date, the application to youth offenders of a split sentencing option under the general probation statute will write § 5010(a) out of the YCA by making irrelevant the condition that "[i]f the court is of the opinion that the youth offender does not need commitment," then the court may place the youth on probation.

The sentences imposed in the two cases before us were not within the authority that Congress has granted. Therefore, I dissent.